[Crim. No. 5105.  In Bank.  Oct. 27, 1950.]

THE PEOPLE, Respondent, v. MONROE ARTHUR
JACKSON, Appellant.

Richard E. Dafler, Public Defender, for Appellant.

Fred N. Howser, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

SPENCE, J.—Defendant was charged by information with the crime of murder, and with four prior convictions of felony, for each of which, it was alleged, he ''served a term . . . in a penal institution.'' Upon arraignment, defendant pleaded guilty and admitted the four prior convictions. At the request of defendant's counsel, the matter was referred to the probation officer for a report and recommendation as to punishment. Evidence directed to the degree of the murder was then heard, and the court fixed the crime as ''first degree murder.'' Thereafter the probation officer's report was filed, with the recommendation of life imprisonment. Following the argument of counsel as to the sentence to be imposed, the court found defendant to be an habitual criminal under sections 644(b) and 3048.5 of the Penal Code, and judgment was entered imposing the death penalty. The cause comes to this court upon an automatic appeal. (Pen. Code, § 1239(b).)

As grounds for reversal, defendant argues these points: (1) the impropriety of his arraignment; (2) the inadmissibility of certain evidence at the hearing to determine the degree of the murder; (3) the misconduct of the deputy district attorney in his argument directed to the matter of the punishment to be imposed; (4) the illegality of the habitual criminal adjudication; and (5) the court's abuse of its discretion in imposing the death sentence. There is no merit to any of these objections, and the judgment must be affirmed.

Defendant contends that he was not properly arraigned because the court, while "mention[ing] the matter of constitutional rights" at the time, did not then designate them nor advise him relative thereto. However, defendant cites no authority or provision of law, and independent research has not revealed any, indicating the desired enumeration to constitute, as he claims, "a regular course of judicial proceedings." The record shows that defendant was personally present at all times pertaining to the arraignment (Pen. Code, § 977); that the correctness of the information in its reference to defendant by name was confirmed at the first hearing on arraignment (Pen. Code, § 989); that defendant was "informed of his legal rights," and in response to his request for counsel, the Public Defender was "appointed . . . to assist him" (Pen. Code, § 987); that copies "of the Information . . . and . . . the Reporter's Transcript of the preliminary hearing" was served upon defendant; that his counsel "waive[d] the reading of the information" in court; that defendant was granted two continuances "within which to enter a plea"; and finally after defendant indicated that he was ready to proceed, the court, upon observing that he had been "advised of all [his] rights," asked defendant how he would "plead to the charge set forth in the information . . . guilty or not guilty," to which query defendant responded "guilty" (Pen. Code, § 988). It thus appears that defendant was duly arraigned in accordance with the requirements of the Penal Code, and, in particular, his constitutional right to have the aid of counsel (Const., art. I, § 13) was fully met. (*People* v. *Miller,* 137 Cal. 642, 645-646 [70 P. 735]; *People* v. *Thompson,* 41 Cal.App.2d Supp. 965, 966 [108 P.2d 105]; *People* v. *Avilez,* 86 Cal.App.2d 289, 293-296 [194 P.2d 829].) Accordingly, the legal sufficiency of defendant's arraignment is not open to dispute.

Nor is there any merit in defendant's objection to the admission of certain evidence—a confession—at the court's

hearing to determine the degree of the murder. Consideration of this point requires a brief recital of the factual background involved. It appears that on February 2, 1950, at approximately 7 p. m., defendant, about 33 years old, carrying a shotgun, approached the rear door of a small rural grocery store located on the outskirts of Porterville, with the intent to rob the proprietor, Alvin B. Holt. The latter, who was alone in the store at the time, attempted to resist defendant's entry. In the ensuing struggle, defendant pulled Holt out of the store and to a place about ten feet behind the rear door; the gun was discharged, Holt suffered a mortal wound in the stomach, and he died later that evening in the hospital. There were no eyewitnesses to the affray. Defendant was apprehended on February 4, and following his arrest, he made three confessions to the police. There is no contention that these respective confessions were not freely and voluntarily made, or signed by defendant under any threat of force or promise of immunity. (8 Cal.Jur. § 201, p. 109.)

Defendant made two confessions on the day of his arrest, February 4. The first was a one-page statement of his commission of the crime, a brief résumé dictated by the sheriff from information received from defendant. The second was in the form of questions and answers, a more extended recital of the factual background and related circumstances, consisting of 14 pages. In both of these confessions, defendant claimed that the deceased applied an insulting epithet to him as they wrestled with the gun, and that he told the "old man" to let go of it or "I'll kill you"; that the struggle continued, the gun was discharged, and the deceased was mortally wounded. The third confession was made by defendant on February 7, also in the form of questions and answers. It concerned principally a "hold-up" in the same general vicinity committed by defendant on January 26, a week before the homicide here in question, but it also contained several references to the latter crime—particularly with respect to defendant's use of the same shotgun on both occasions and his style of dress at the time he was "trying to hold up Mr. Holt." Over defendant's objection, this third confession in its entirety was admitted in evidence. He claims that this was "highly prejudicial" and "improper," particularly in view of its "conflict with facts stated by defendant in his prior [second] confession," that is, with certain statements regarding the manner in which he came into possession of the "shotgun" in question and his disposition of it.

In support of his position defendant cites the general rule that evidence of other crimes is inadmissible for the purpose of showing criminal disposition or propensity of the accused to commit the specific offense charged. (*People* v. *Westek,* 31 Cal.2d 469, 476 [190 P.2d 9].) But an exception to the rule is recognized where the evidence in question "tends to prove a motive for the commission of the crime charged; where a felonious or fraudulent intent, being a necessary element in the crime charged, the evidence of other crimes tends to establish and fix the existence of such motive or intent; and in cases *where the evidence tending to establish the crime charged is intermixed with the evidence of the other offenses.*" (Emphasis added; *People* v. *Hermes,* 73 Cal.App. 2d 947, 957 [168 P.2d 44] ; see, also, *People* v. *Hatch,* 163 Cal. 368, 378-379 [125 P. 907] ; *People* v. *Peete,* 28 Cal.2d 306, 315 [169 P.2d 924] ; *People* v. *Dabb,* 32 Cal.2d 491, 499-500 [197 P.2d 1] ; *People* v. *Pollock,* 31 Cal.App.2d 747, 757-758 [89 P.2d 128] ; *People* v. *James,* 65 Cal.App.2d 709, 710 [151 P.2d 572].) ▮ Of course, the "relevancy of evidence that proves crimes other than that charged must . . . be examined with care, due to the prejudicial nature of all such evidence," and the "possibility of severing relevant from irrelevant portions should, in every case, be considered, thereby protecting the defendant against reference to other crimes where it has no tendency to establish facts pertinent to the proof of the crime charged." (*People* v. *Dabb, supra,* p. 500.)

Within these legal principles, the confession in question was properly admitted in evidence. In the first place, the third confession was pertinent in shedding light on defendant's "motive or intent" to hold up small stores, as was the fact in the present case resulting in the deceased's murder, and with the use of the same "shotgun" as a connecting link in the successive "stick-ups." Moreover, the court expressly recognized that only certain parts of the entire confession were relevant to the circumstances surrounding the homicide here involved, and it was only "for the purpose of perusing that portion which [was] applicable" as well as to "clear up some admitted inaccuracies" in defendant's "second confession," that the third confession was admitted in evidence. Thus, in overruling defendant's objection to the admissibility of the third confession, the court stated: "The only reason for offering the confession in evidence is to assist the Court in determining the degree of the murder . . . There are portions of the transcript, or confession, that have no bearing

upon this issue but there are some in the transcript that do, I think." Defendant had already been sentenced on the prior robbery offense, pursuant to his plea of guilty thereto, and the court, with its attention having been drawn to the disposition of the earlier proceeding, presumably considered only those parts of the third confession as were material to the present case and disregarded the other parts, in line with its observations as above quoted. Under these circumstances, the relevancy of the third confession containing "evidence" material to "the crime charged," though "intermixed with the evidence" of the prior robbery admittedly committed by defendant in the preceding week, is not open to dispute. (*People* v. *Dabb, supra.*)

■ Nor is there any force to defendant's claim that the deputy district attorney was guilty of prejudicial misconduct in his argument to the court with reference to the imposition of appropriate punishment on defendant. No objection was made by defendant at the time of such argument before the court. (8 Cal.Jur. § 321, p. 258.) As heretofore stated, in accord with defendant's request, the matter of his punishment was referred to the probation officer for specific recommendation, and while the latter's report is not a part of this record, it may be inferred from the argument of counsel, as appearing in the reporter's transcript of the proceedings herein, that such report was filed and that it carried a recommendation of life imprisonment "with all privileges of parole . . . denied." In opposition to such recommendation and in advocacy of the imposition of the death penalty "in view of all the facts in this case," the deputy district attorney first noted that the court could not "actually pass a sentence of life imprisonment . . . without any privilege of parole in the future," and then proceeded to cite several sections of the Penal Code bearing on a defendant's eligibility for parole under a life imprisonment sentence, as well as the effect of an habitual criminal adjudication by reason of "prior convictions." Defendant argues that the "judge and the district attorney" might recommend the denial of parole privileges in connection with a life imprisonment sentence (Pen. Code, § 1203.01), but nevertheless the ultimate determination of such matter rests with the Adult Authority in its fixing of sentence pursuant to the prescribed minimum and maximum limitations under our penal statutes. (Pen. Code, § 3000 et seq.) Accordingly, the deputy district attorney noted the "parole" feature of the probation officer's report as "beyond the scope of [the]

Court's authority in pronouncing sentence." Under the circumstances, it would appear that the deputy district attorney was well within the legitimate scope of legal argument in pointing out the circumstances attending a life imprisonment sentence here. (*Cf., People* v. *Sampsell,* 34 Cal.2d 757, 762-764 [214 P.2d 813].)

Likewise there is no merit to defendant's claim that his adjudication as an habitual criminal is without legal support in the record. As above stated, the information charged defendant with four prior convictions of felonies, as to each of which he was alleged to have "served a term therefor in a penal institution." At the time of arraignment the court, after specifically directing defendant's attention to each separate prior conviction in the precise wording of the charge, both as to the particular criminal offense named and the service of sentence therefor, expressly asked defendant as to each one, "Did you or did you not suffer the alleged . . . prior conviction," and in each instance defendant replied, "I did." The minute order of defendant's entry of his plea states that "defendant pleaded guilty as charged in the information and to 4 prior convictions." Defendant now argues that such admissions were not sufficient under the requirements of Penal Code section 644, because he was not further asked by the court "whether or not he had served terms in penal institutions on said prior felonies." But such argument is a mere quibbling with the facts, for as the court precisely referred to each separate conviction and imprisonment as charged, it cannot be assumed that there was any misunderstanding on the part of defendant or his counsel as to the purport of his admissions to include the prior imprisonment as well as the particular conviction in question. (*In re Valenzuela,* 71 Cal.App.2d 198, 199-200 [162 P.2d 301]; *People* v. *Houston,* 88 Cal.App.2d 11, 15 [198 P.2d 53].) Defendant unavailingly cites cases for the proposition that where the information charges a prior conviction of a felony, *but fails to allege that defendant served sentence therefor,* it is held that his admission of the conviction *as charged* furnishes no evidence that he actually served imprisonment therefor. (*In re Boatwright,* 216 Cal. 677 [15 P.2d 755]; *People* v. *Nicholson,* 34 Cal.App.2d 327 [93 P.2d 223]; *People* v. *Murray,* 42 Cal.App.2d 209 [108 P.2d 748].) That is not the record here. Moreover, contrary to defendant's claim, there was evidence presented to the court during the proceedings on this precise point of defendant's imprisonment on his prior

felony convictions. In his second confession, as above designated and admitted in evidence as part of the record to sustain defendant's conviction for the murder here charged, defendant particularly associated three of the alleged prior felony convictions with imprisonment terms in out-of-state penal institutions and separately identified them. "The confession of a prisoner at the bar of his guilt as charged as well as of the truth of the allegation of prior convictions is . . . most satisfactory evidence upon which to convict and will support a judgment that he is an habitual criminal." (*In re Gilliam*, 26 Cal.2d 860, 866 [161 P.2d 793]; also *In re Valenzuela, supra*, p. 200.)

Finally, there is defendant's argument that the trial court abused its discretion in imposing the death penalty upon him. The contention seems pointless. Admittedly the homicide here involved was committed in the perpetration of a robbery, and as such constituted murder of the first degree. (Pen. Code, § 189; *People* v. *Bautista*, 22 Cal.2d 867, 869 [141 P.2d 417]; also *People* v. *Lindley*, 26 Cal.2d 780, 791 [161 P.2d 227]; *People* v. *Isby*, 30 Cal.2d 879, 888 [186 P.2d 405].) While defendant urges that the killing was "accidental . . . precipitated by the unfortunate attempt of the deceased to wrestle the gun from defendant," and that the "Probation Officer reported . . . a recommendation of life imprisonment," these same matters were fully argued at the hearing to determine the degree of murder and the sentence to be imposed therefor. Their evaluation in the light of the entire record was for the trial court's consideration, and it unquestionably appears that the trial court, acting within its discretion and upon a consideration of all the circumstances, fixed the sentence in accordance with the statutory authority vested in it. (Pen. Code, § 190.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

Carter, J., and Schauer, J., concurred in the judgment.