[Crim. No. 9079.   In Bank.   Mar. 14, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT PARKS EBNER, Defendant and Appellant.

---

Robert Parks Ebner, in pro. per., and Cary G. Branch, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—Charged with the commission of five robberies (Pen. Code, §§ 211, 211a) and with three prior felony convictions, defendant pleaded not guilty to the robbery counts and admitted the prior felonies. The jury found defendant guilty of three counts of robbery. Since the jury failed to reach a verdict on the other two robbery counts the court dismissed them. The court accordingly entered a judgment of guilty on three counts of robbery; it also found defendant to be an habitual criminal under Penal Code section 644, subdivision (a).

This case chiefly involves the issue of whether the introduction of certain exculpatory statements of defendant allegedly obtained in violation of the rules established in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], constituted prejudicial error. Assuming the statements were procured at the accusatory stage we explain why we cannot hold that their introduction into evidence caused defendant prejudice; as a result we have concluded that the judgment of conviction of robbery should be affirmed. We find, however, that the cause must be remanded to the trial court for redetermination of defendant's status as an habitual criminal.

As we have stated, defendant suffered convictions for three armed robberies. The first occurred on September 19, 1962, at 1:20 a.m., at the Garden Liquor Store in Los Angeles. Marvin O'Neal, the night manager of the store, identified defendant as the perpetrator. The other two, both of which likewise took place in Los Angeles, occurred in the early morning hours of October 23, 1962, one at the Clark Liquor Store and the other at Bourbon House Liquors.

As to the robbery at the Clark Liquor Store, a clerk employed there, Marion Mann, testified that a person whom he later identified as defendant held up the store on October 23, 1962, at 1:30 a.m. The robber took a sum of money which included $51.50 in change contained in coin wrappers. At the trial the prosecution showed Mann two coin wrappers, one blue, the other orange. Mann testified that they bore colors similar to the ones taken from the store. Another employee of the store, Ben Sherfield, identified defendant as the robber.

A clerk at the Bourbon House Liquors, one Ernest Metoyer, testified that at about 1:55 a.m. on October 23, 1962, defendant entered that store, "pulled a gun and said, 'Open it up.'" Defendant took an amount in excess of $200; it "was in all denominations, currency and coins, wrappers, so forth, loose coins." Some of the stolen coins were contained in a wrapper marked with the name of a paint company. At the trial Metoyer identified the name stamped on the blue wrapper, exhibited by the prosecution, as that of the paint company.

Wanda Hagger, a waitress at a drive-in, testified that between 2 and 2:30 a.m. on October 23 defendant asked her to give him paper money in exchange for several rolls of wrapped coins. She had requested defendant to write his name and address on the wrappers; he had written on each one, "Bob Ebner, 1509 South Hampshire." She further testified that the following night she told two police officers about this transaction, showing them two of the wrappers. At the trial she identified these wrappers as the ones there exhibited by the prosecution.

Officer Van Over of the Los Angeles Police Department testified that he talked with Mrs. Hagger a little after midnight on October 24; she gave him the two coin wrappers signed with defendant's name and signifying the South Hampshire address. After checking the files at the police station he discovered defendant's likely residence to be 1509 South *New* Hampshire. At that address a woman directed Officer Van Over to defendant's room; the officer awakened defendant at about 4 a.m. Officer Van Over questioned defendant as to the charges, searched unsuccessfully for a gun, and took certain items of clothing to the station. At some time during this interview the officer arrested defendant and removed him to jail.

The defense rests upon a denial of all the robberies and an alibi as to two. Defendant called as his first witness Joseph Faber, the owner of a bar across the street from Clark's Liquor Store, who testified that during the early hours of October 23

defendant, accompanied by a woman, had been in his bar. He further stated that although he did not watch defendant at all times, he knew that when his porter came into the bar and said that "the place across the street was just held up," defendant and his companion were still at the bar. Defendant had remained about 10 or 15 minutes and then left.

Defendant denied on the witness stand that he had committed any of the charged robberies. He had been at Mr. Faber's bar from midnight until about 2 a.m. on October 23. After he left, he drove his companion home and then went to the drive-in where he asked the waitress to give him paper money in exchange for wrapped coins. He had obtained the money mainly from gambling. He saved small coins; he made a practice of asking for coin wrappers at various places; he might have picked up wrappers from Bourbon House Liquors, one of the stores he is alleged to have robbed. On cross-examination he admitted that the arresting officers had asked him where he was on the night of October 23 but stated that he did not recall what he had told them because he had been half asleep and suffered from a diabetic condition. He further acknowledged that he had put his name on the coin wrappers. He admitted three prior felony convictions.

Officer Van Over, the first rebuttal witness for the prosecution, testified that at the time of defendant's arrest he had asked defendant about his activities on the night of October 22; defendant had said that he had gone to bed at 7:30 in the evening and did not leave his room thereafter. Further impeaching defendant, Officer Hernandez of the Los Angeles Police Department testified that on the afternoon of October 24, in response to his questions, defendant had denied signing his name on the coin wrappers. The record does not indicate whether, before defendant made either of these statements, the officers advised defendant of a right to counsel and a right to remain silent.

As we have previously indicated, defendant's primary contention here is that the admission of the statements of the two officers, presented for impeachment purposes, constituted prejudicial error; they were procured, he complains, in violation of the rules established by *Escobedo* v. *Illinois, supra* (1964) 378 U.S. 478, and *People* v. *Dorado, supra* (1965) 62 Cal.2d 338. But, of course, defendant's argument must depend upon a showing that the statements were obtained at the accusatory stage (*People* v. *Stewart* (1965) 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97]), and, since the statements

were exculpatory, that their admission constituted prejudicial error. (*People* v. *Hillery* (1965) 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382].)

Even assuming defendant's first premise, we cannot find the asserted prejudice under the applicable test. (*People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243]; *Fahy* v. *Connecticut* (1963) 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171].) One witness identified defendant as the robber of the first liquor store; two witnesses identified him as the robber of the second; and another witness identified him as the robber of the third. Beyond this convincing evidence we have the demonstrative evidence of the coin wrappers: the identification of the color of the wrappers in the one instance and of the name of the paint company stamped upon a wrapper in the other. Furthermore, the uncontradicted testimony shows that on the very night of the robbery at the unusual hour of 2 or 2:30 a.m., defendant asked a drive-in waitress to give him paper money in exchange for several rolls of wrapped coins. Obviously these basic facts compose a powerful case against defendant.

Defendant nevertheless asks us to conclude that his two exculpatory remarks, repeated by the officers, were such that it is reasonably probable or possible that their omission from evidence would have produced a result more favorable to defendant. The first of these is defendant's statement to Officer Van Over that he had gone to bed at 7:30 p.m. on the night of October 22 and had not left his room thereafter. The statement certainly did not directly contradict any of defendant's testimony about his activities the night of the first robbery, September 19, 1962. Although the statement tended to impeach directly defendant's credibility as to his account of the robberies of October 23, that account had been subject to manifest contradiction in many other respects. The added drop of incredibility could not have had much effect upon this well-filled tumbler of water.

The second of defendant's impeaching statements, his denial of signing his name on the coin wrappers, likewise could have had only slight bearing upon the jury's evaluation of his credibility. Any belief in his veracity would have been weakened not only by the conflicting evidence in the record but by his own admission of prior convictions of burglary, robbery and forgery. The admission of the second statement, like the first, did not cause such additional impact of impeachment as to justify reversal.

■ We turn to a discussion of defendant's further contention that the trial court erred in adjudging defendant to be an habitual criminal under subdivision (a) of section 644 of the Penal Code.[1] Immediately prior to the commencement of defendant's trial he was arraigned on prior felony convictions. The information alleged that defendant had suffered three prior felony convictions. One was a conviction of forgery in 1948 in Utah,[2] another was a conviction of burglary in 1946 in Arizona,[3] and a third, a conviction of robbery in 1958 in California. The information further alleged that defendant had served a term in state prison for each of the three convictions. At the arraignment the prosecutor summarized the allegations contained in the information; defendant waived further reading of the information and admitted the prior felonies.

Defendant erroneously contends that the prosecution failed to prove elements essential to an adjudication that he was an habitual criminal under Penal Code section 644: namely, that the prior felony convictions of burglary and robbery were separately brought and tried and that defendant served separate prison terms for the crimes.

Defendant's admission of the prior convictions is not limited in scope to the fact of the convictions but extends to all allegations concerning the felonies contained in the information. (*People* v. *Jackson* (1950) 36 Cal.2d 281, 287 [223 P.2d 236]; *People* v. *Greenwell* (1962) 203 Cal.App.2d 1, 3-4 [21 Cal.Rptr. 161].) In effect defendant admitted to two felony

[1]That subdivision provides: ''Every person convicted in this State of the crime of robbery, . . . who shall have been previously twice convicted upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison and/or federal penal institution either in this State or elsewhere, of the crime of robbery, burglary, burglary with explosives, rape with force or violence, arson, murder, assault with intent to commit murder, grand theft, bribery of a public official, perjury, subornation of perjury, train wrecking, feloniously receiving stolen goods, felonious assault with a deadly weapon, extortion, kidnaping, mayhem, escape from a state prison, rape or fornication or sodomy or carnal abuse of a child under the age of 14 years, or any act punishable under Section 288 of this code, conspiracy to commit any one or more of the aforementioned felonies, shall be adjudged a habitual criminal and shall be punished by imprisonment in the state prison for life.''

[2]A conviction of forgery is not included as a crime relevant to a determination of habitual criminality under section 644.

[3]Defendant makes no contention that the California statute defining burglary, Penal Code section 459, does not encompass all acts constituting burglary under the Arizona statute defining burglary which was in force at the time of defendant's conviction. (Cf. *People* v. *Burns* (1960) 181 Cal.App.2d 480 [5 Cal.Rptr. 301].)

convictions at different times and in different states; the trial court therefore correctly concluded that defendant had twice been convicted "upon charges separately brought and tried."

Defendant argues that he was not in fact "tried" on the prior California robbery conviction because he pleaded guilty to the charge and did not undergo a trial on the merits. The term "tried," as used in the context of the statutory phrase, "charges separately brought and tried," signifies that the two prior felony proceedings must be totally separate, not only during proceedings before trial but also as to those leading to the ultimate adjudication of guilt. (Cf. 2 Witkin, Cal. Crimes (1963) § 1008, p. 956.) Past decisions draw no distinction between an adjudication of guilt based on a plea of guilt and that predicated on a trial on the merits. (See *People* v. *Greenwell, supra,* 203 Cal.App.2d 1, 4-5; *People* v. *Stanphill* (1958) 166 Cal.App.2d 467, 470 [333 P.2d 270].)

Since defendant admitted serving prison terms arising from the 1946 Arizona conviction and the 1958 California conviction, as well as a term in connection with the intervening Utah conviction of forgery in 1948, the trial court could properly find that defendant *served separate* prison terms. Although the court in *People* v. *Collins* (1964) 228 Cal.App.2d 460, 464-465 [39 Cal.Rptr. 595], held that the admission of the prior felony allegations did not relieve the prosecution of the requirement for proof of service of separate terms when such service was not so alleged, that case may be distinguished from the instant one. There the record presented a definite possibility that defendant had not in fact served separate prison terms since the terms may have overlapped; here defendant, during cross-examination at trial, admitted that he had been taken to the penitentiary after each conviction.

The trial court, in pronouncing judgment, ruled that defendant had admitted the requisite prior felony convictions and accordingly held defendant to be an habitual criminal. We find no error in the manner in which the trial court rendered its judgment. (Cf. *People* v. *Vaile* (1935) 2 Cal.2d 441, 444-445 [42 P.2d 321].)

Defendant finally contends that the trial court in determining whether defendant was an habitual criminal could not properly consider his Arizona conviction because in the proceedings leading to. that conviction defendant was deprived of his constitutional right to counsel. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733].)

We have held that a prior felony conviction cannot support an adjudication of habitual criminality under Penal Code section 644 unless at the prior proceeding the defendant was represented by counsel or intelligently and understandingly waived that right. (*In re Tucker* (1966) *ante,* p. 15 [49 Cal.Rptr. 697, 409 P.2d 921]; *In re Luce* (1966) *ante,* p. 11 [48 Cal.Rptr. 694, 409 P.2d 918]; *In re Woods* (1966) *ante,* p. 3 [48 Cal.Rptr. 689, 409 P.2d 913].) We cannot determine on the basis of the record before us whether defendant's Arizona conviction of burglary can support an adjudication of habitual criminality. Following the procedure outlined in *Tucker, Luce,* and *Woods,* we must return this cause to the trial court for hearing and findings on the factual issue whether defendant suffered a deprivation of his constitutional right to counsel in the Arizona proceedings.

The judgment convicting defendant of robbery is affirmed. The judgment is reversed insofar as it adjudicates defendant to be an habitual criminal, and the cause is remanded to the trial court for redetermination of defendant's status as an habitual criminal and resentencing in accordance with this opinion.

Traynor, C. J., McComb, J., Peek, J., Burke, J., and White, J.,* concurred.

PETERS, J.—I dissent.

It is my opinion that the statements given to the police by the defendant at the time of and after his arrest were secured in violation of defendant's constitutional rights as defined in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]. Their admission was therefore error. Although statements and not confessions, and therefore subject to the harmless error rule (*People* v. *Hillery,* 62 Cal.2d 692 [44 Cal. Rptr. 30, 401 P.2d 382]), their admission was clearly prejudicial. This is so because they were used to impeach defendant and his defense witness on vital matters. They indicate that he had lied to the police during the interrogation, and was, therefore, not to be believed. In view of the fact that the jury could not agree as to two of the charges as to which there was claimed eyewitness identification, and in view of the fact that the impeachment related to the two offenses of October 23,

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

1962, of which defendant was convicted, it seems clear that the impeachment testimony was the bombshell that completely undermined defendant's defense as to these two charges.

The record shows that the statements were secured under the following circumstances. Officer Van Over, before the arrest, knew the robberies in question had taken place on October 23, knew that the robber had taken rolled coins, knew that the waitress at the drive-in after 2 a.m. on October 23 had exchanged currency for rolled coins for some man, this man had written the name of defendant on one of the wrappers and had also given the address of the defendant. Van Over, at 4 a.m. in the morning, went to the given address, found defendant, questioned him, conducted a search, and arrested him.

At the trial defendant denied all the robberies, and produced an alibi as to the two robberies committed on the early morning of October 23. Joseph Faber, the owner of a bar situated across the street from Clark's Liquor Store (the site of one of the robberies of which defendant was convicted) testified that during the early morning hours of October 23, the date of that robbery, and during the time the second robbery charged to have been committed that night occurred, he saw the defendant in the company of a woman in his bar. The witness further testified that, although he did not watch the defendant at all times, he did know that when his porter came in and said "Joe, the place across the street was just held up," the defendant and his girl friend were still drinking at that time in his bar and remained there for some time thereafter.

Defendant corroborated this alibi testified to by Faber. He admitted going to the drive-in restaurant and asking the attendant to exchange dollar bills for rolled coins but he contended that he obtained the money from gambling, and that he frequently secured coin wrappers at various places, including one of the liquor stores he was alleged to have robbed. He was asked on cross-examination if he had ever told the police a story other than that he had been in Faber's bar on October 23. He denied having told any different story. Then one of the statements secured in violation of *Escobedo, supra,* was introduced by way of impeachment. Officer Van Over was recalled and he testified that when defendant was arrested at 4 a.m. on October 25 defendant had stated that he had worked on October 22 and had then come home and remained there until noon the following day. This was directly contrary to Faber's testimony and to that of defendant. This

erroneously admitted statement undermined defendant's main defense as to the two robberies alleged to have been committed in the early morning hours of October 23, and demonstrated that he was a liar, not to be believed.

Also by way of impeachment, Officer Hernandez testified that defendant, upon being questioned in jail on October 25, denied writing his name on the coin wrappers. This was directly contrary to defendant's testimony. It again demonstrated that defendant had lied to the police. To say that the admission of these statements was not prejudicial, as do the majority, is to close one's eyes to the realities of the situation. As to the two robberies committed on October 23, the prejudice is obvious.

The majority assume the two statements were secured in violation of the rights discussed in *Escobedo, supra,* and then hold that their admission was not prejudicial. The "assumption" that the admission of these statements violated *Escobedo* is in accordance with the facts.

*People* v. *Dorado, supra,* 62 Cal.2d 338, sets forth the following requirements for the exclusion of these statements (at pp. 353-354): "(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights."

The first two criteria enumerated above were discussed in *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97]. It was there held that normally they are fulfilled when the suspect is placed under arrest. Defendant's statement to Officer Hernandez, which was made in jail, was obviously made after arrest. Although it appears that the arrest occurred during the 4 a.m. visit to defendant's home, the record does not show whether the arrest occurred before or after defendant made the statement testified to by Officer Van Over. Other than the evidence of the rolled coins, the record does not show what evidence the officers had connecting defendant with the robberies at the time they entered his apartment, and so far as appears the only evidence obtained at the apartment was the exculpatory statement of defendant and some clothes which matched the description of those worn during one of the robberies. Defendant was arrested before he and the officers

left the apartment, and under the circumstances it would seem that it must be presumed that the investigation had focused on defendant and that for all practical purposes he was in custody from the commencement of the interview at his apartment.

As to whether the police had undertaken a process of interrogations designed to elicit incriminating statements, the record is ambiguous. In effect, this court is again being asked to perform a factfinding function. Although there is some testimony by both the arresting officer and the defendant as to what occurred, there has been no determination by the trier of fact.

Nor has there been any opportunity given to both sides to develop the facts. There is testimony in the record that some questions were asked of the defendant and that some accusations were made. Effective questioning and cross-examination of the witnesses would be necessary to remove the ambiguities now present. In determining whether there was a process of interrogations that lends itself to eliciting incriminating statements, *Stewart* requires that we "analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances." (*People* v. *Stewart, supra,* 62 Cal.2d 571, 579.) As was stated in *People* v. *North,* 233 Cal.App.2d 884 (at p. 888 [44 Cal.Rptr. 123]):

"Manifestly, the 'total situation' cannot be 'analyzed,' and a 'determination based upon objective evidence' cannot be made, by an appellate court when confronted with a record that is totally devoid of 'objective evidence' relating to any of the 'factors' required by the *Stewart* test."

The failure to provide such a complete record must be placed on the prosecution for it is they who carry the burden of proof on this issue. (*People* v. *Stockman,* 63 Cal.2d 494, 498-499 [47 Cal.Rptr. 365, 407 P.2d 277].)

Furthermore, from the record that is before this court, and applying the criteria announced in *People* v. *Stewart, supra,* 62 Cal.2d 571, it appears that the seemingly exculpatory statements elicited from the defendant by the police were obtained as a result of a process of interrogations which tended to elicit incriminating statements. This conclusion is based on the fact that, at the time of the defendant's arrest, the police, upon awakening the defendant during the early morning hours, leveled charges against him and asked him questions

concerning the robberies and his possible participation therein. The statements they obtained were given in response to those questions. The statement obtained by Officer Hernandez was given in response to a question by the officer at a time when the defendant had been in jail overnight and had previously undergone the above-mentioned process of interrogation.

In the face of a silent record it must be further presumed that the defendant was not advised of his right to remain silent and his right to counsel. (*People* v. *Stewart, supra,* 62 Cal.2d 571, 580.) It follows that the statements were obtained in violation of the standards set forth in *People* v. *Dorado, supra,* 62 Cal.2d 338.

Thus the assumption in the majority opinion that such statements were erroneously admitted is compelled by the testimony.

The only question left for determination is whether such questions and answers were prejudicial. It must be remembered that although the statements under discussion were exculpatory in form they were evidence favorable to the prosecution to the extent that they were inconsistent with the version of events as testified to by the defendant and his witness. As such, their admission before the jury must have cast grave doubts upon the defendant's testimony and could have been considered as showing a consciousness of guilt. To a very grave extent, the admission of the statements weakened the defendant's case, at least as to the two offenses alleged to have been committed on October 23, 1962. Except as to the evidence of the rolled coins and the admissions, both of which related to the two offenses of October 23, the prosecution's case in chief as to each of the robberies was substantially the same, and the jury's indecision, as reflected by their inability to reach a guilty verdict on two of the counts, indicates that without the admission of the statements the jury was not completely persuaded by the strength of the prosecution's case. The statements here under discussion must have had a devastating effect upon the credibility of defendant. The defendant's testimony, as bolstered by his corroborating witness, is tenable and believable. From a reading of the entire record, it must be concluded that if the admission into evidence of these statements was error that error is prejudicial as "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." (*Fahy* v. *Connecticut,* 375 U.S. 85, 86 [84 S.Ct. 229, 11 L.Ed.2d 171].) It might also be added that the admission

of such evidence was also prejudicial under the rule announced in *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243], in that it is reasonably probable that without the error a result more favorable to the defendant would have resulted.

I would reverse the judgment at least as to the two robberies alleged to have been committed on October 23, 1962.

Appellant's petition for a rehearing was denied May 11, 1966, and the opinion and judgment were modified to read as printed above. Mosk, J., did not participate therein.