[Crim. No. 7856.  First Dist., Div. One.  Jan. 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD JAMES THOMAS, Defendant and Appellant.

**COUNSEL**

Paul Mike Goorjian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and William D. Stein, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—Defendant Clifford James Thomas was found guilty after a trial by jury of each of the following offenses:

Count One: Robbery, 1st degree (Pen. Code, § 211); victim, George Page;

Count Two: Robbery, 1st degree (Pen. Code, § 211); victim, Susan B;

Count Three: Attempted robbery, 1st degree (Pen. Code, § 664); victim, Kathryn V;

Count Four: Rape, by means of threats of bodily harm (Pen. Code, § 261, subd. 4); victim, Susan B;

Count Five: Rape, by means of threats of bodily harm (Pen. Code, § 261, subd. 4); victim, Kathryn V;

Count Six: Kidnaping to commit robbery (Pen. Code, § 209); victim, Susan B;

Count Seven: Kidnaping to commit robbery (Pen. Code, § 209); victim, Kathryn V;

Count Eight: Oral copulation with the sexual organ of another by means of force (Pen. Code, §§ 288a, 288b); victim, Susan B;

Count Nine: Oral copulation with the sexual organ of another by means of force (Pen. Code, §§ 288a, 288b); victim, Kathryn V.

He was thereafter sentenced to prison on each of the nine counts. Sentences as to counts II to IX, inclusive, were ordered to run concurrently, while the sentences on those counts were ordered to run consecutively with the sentence on count I. Thomas appeals from the judgment.

Viewing the evidence in the light most favorable to the People, as we must following a guilty verdict (*People* v. *Sweeney*, 55 Cal.2d 27, 33 [9

Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Caritativo,* 46 Cal.2d 68, 70 [292 P.2d 513]), we state the pertinent facts.

In the early morning of February 10, 1968, Thomas, wearing a nylon stocking over his head and armed with a .22 calibre rifle, robbed George Page, a service station operator, of money. A short time later Susan and Kathryn, whose full names we shall not disclose for reasons which will become obvious, were walking toward an apartment where they resided. Observing them, Thomas emerged from his automobile, placed his rifle at the back of Kathryn's neck and ordered both girls to walk in to a nearby alley. In the alley Thomas took $11 from Susan and demanding money from Kathryn, found that she had none. He then ordered the girls back into his car after which he drove to a lonely hillside road. There, after firing the rifle—"he said that was to prove that it was loaded and he wasn't kidding"—he ordered the girls into the rear area of the car and to remove their clothes. By means of force and threats he raped each of the girls and forced each to engage in acts of oral copulation upon him. Other sexual indignities were perpetrated on the girls.

Each of the jury's verdicts was supported by substantial evidence; no contention is made to the contrary.

█ Thomas asserts error in the admission of "other offenses" for the "sole purpose of showing that appellant was criminally disposed to commit sex crimes." The other offenses in question were Thomas' additional, but not charged, sexual offenses against the girls, sodomy, forcing one girl to orally copulate the sexual organ of the other and forcing each to masturbate the other. The contention is plainly without merit. It has long been held that " 'If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme.' " (*People* v. *Ciulla,* 44 Cal. App. 719, 722 [187 P. 46]; see also *People* v. *Carmen,* 43 Cal.2d 342, 345 [273 P.2d 521]; *People* v. *Jackson,* 36 Cal.2d 281, 285 [223 P.2d 236].)

█ Next, Thomas contends error in the court's refusal to require a social worker to divulge "information contained in Mrs. Thomas' public assistance file." The court's ruling was based on Welfare and Institutions Code section 10850 relating to the confidentiality of such information. We note that the only showing of materiality or relevancy of the "public assistance file" is embraced in the statement of counsel: "We have sub-poenaed this witness for the purpose of showing a prior consistent state-

ment by the defendant to her on . . . the middle of March, 1968." It is fundamental that before one may complain on appeal of improper exclusion of evidence, some showing, by the offer of proof or otherwise, must have been made of the materiality of the excluded matter. Here no showing was made as to what the prior consistent statement was, or with what in the trial it was consistent. Evidence Code section 354, subdivision (a), codifying earlier rules (see Witkin, Cal. Evidence (2d ed. 1966) p. 1211) states: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: (a) *The substance, purpose, and relevance of the excluded evidence was made known to the court by the question asked, an offer of proof, or by any other means*; . . ." (Italics added.) There is accordingly no merit in the instant contention. It becomes unnecessary to pass upon the effect of Welfare and Institutions Code section 10850 when a proper showing of the materiality of "public assistance files" is made by a criminal defendant.

■ Nor is merit seen in the contention that Thomas' pretrial identification procedures were improperly conducted resulting in a denial to him of due process of law. On the day following the reported offenses each of the three prosecuting witnesses was shown five photographs by the police. Each pointed to a picture of Thomas as the assailant. Three days later the witnesses independently identified Thomas in a lineup of five men, as his or her assaulter. Thomas, who was represented by counsel at the lineup, happened to be the shortest of the five men. We find no reason to conclude that the pretrial procedures were unfair, or as in *Stovall* v. *Denno*, 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967], and *People* v. *Caruso*, 68 Cal.2d 183, 187-188 [65 Cal.Rptr. 336, 436 P.2d 336], "unnecessarily suggestive and conducive to irreparable mistaken identification."

■ We see no error in any of the several criticized remarks of the district attorney in his jury argument. With one possible exception his comment appears to have been reasonably based on the evidence and within the legitimate scope of argument. The questionable exception occurred when counsel stated—"The witness in San Jose"—apparently starting to compare the experiences of his female complaining witnesses with those of a victim of another notorious and brutal crime. However, the argument was stopped short at that point by an objection, a motion for a mistrial, and a stern admonition of the trial judge who stated: "Members of the jury, once again I advise you that arguments do not constitute evidence in the case, and any reference to any evidence out of this case is of no materiality whatsoever. So you will dispossess your minds at this point of

any statements relating to evidence outside the case, particularly the last remark of counsel for the People. The court feels it might have been inadvertent, in the heat of argument, which always happens, many times happens on both sides. And the court can't really play God and determine that emotions sometimes don't get the better of either defense counsel or prosecution counsel in presenting arguments to the jury. I want you to be sure now to remember my admonition that any reference in this last remark, to which an objection has been made, will be forever removed from your minds. You're not to consider it in relation to this case whatsoever. It has no bearing, no materiality, and please follow my admonitions strictly and to the letter that I give it. So, to that extent, the objection is sustained. The motion for a mistrial is denied." The error or misconduct, if such it was, was thereby cured.

We have considered the impact of *People* v. *Daniels*, 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225] (decided October 2, 1969) on Thomas' counts VI and VII convictions for kidnaping to commit robbery (Pen. Code, § 209).

In *Daniels* on three occasions one or both defendants gained entrance to a residence or apartment occupied by a lone woman. In the course of ensuing robberies and rapes the victims, under compulsion, walked respective distances within the living area of 18 feet, 5 or 6 feet, and 30 feet. Pointing out (p. 1134), " 'It is difficult to conceive a situation in which the victim of a robbery does not make some movement under the duress occasioned by force of fear,' " the court concluded (p. 1140): ". . . that the brief movements which defendants Daniels and Simmons compelled their victims to perform in furtherance of robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present. Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation 'into another part of the same county.' " The *Daniels* court held (p. 1139): ". . . that the intent of the Legislature in amending Penal Code section 209 in 1951 was to exclude from its reach not only 'standstill' robberies [citation] but also those in which the movements of the victim are merely

incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself."

In the case before us the girls were stopped around midnight by Thomas on a "well lit" public street. They were forced to enter a nearby intersecting and dimly lighted alley. It was in the darkened part of the alley that the robbery of Susan and the attempted robbery of Kathryn took place. This factual situation differs substantially from those of the three cases of *Daniels*. Here the obvious purpose of Thomas was to get the girls quickly away from the lighted street on which the appearance of pedestrians or motorists could reasonably be expected at any moment. The asportation of the victims to the interior of the darkened alley enabled him to accomplish his purpose of robbery with much less probability of apprehension. The "risk of harm [was] over and above that necessarily present in the crime of robbery itself"—the girls were forced into a place where the probability of rescue was lessened, and the likelihood of violence against them heightened since Thomas could reasonably believe it would go undetected. We consider such conduct to constitute "kidnaping to commit robbery" as defined and proscribed by Penal Code sections 207, 209, and as clarified by *People* v. *Daniels, supra,* 71 Cal.2d 1119.

Accordingly we hold on the evidence that the jury and trial court could reasonably find, as they did, that Thomas had kidnaped the girls to commit robbery in contravention of Penal Code section 209.

Thomas' final contentions relate to the sentencing procedures following his several convictions.

He argues that the acts which gave rise to the charges of counts II through IX were part of a course of conduct which comprised a single individual transaction. This argument is sound as to count II (robbery of Susan), count III (attempted robbery of Kathryn), and counts VI and VII (kidnaping to commit robbery). It is so conceded by the Attorney General. (See *In re Ward,* 64 Cal.2d 672, 677-678 [51 Cal.Rptr. 272, 414 P.2d 400].) Accordingly, the sentences on counts II and III must be set aside. However, the robbery, attempted robbery, and kidnaping to commit robbery were completed in the alley before Thomas indicated any intent to sexually molest the girls. The court in sentencing could reasonably conclude, as it did, that the intent to commit the sexual crimes was formed after the completion of the robbery offenses. (See *People* v. *Jackson,* 255 Cal.App.2d 584, 587 [63 Cal.Rptr. 359]; *People* v. *Roth,* 228 Cal.App.2d 522, 534-535 [39 Cal.Rptr. 582].) It follows that the sentences as to

counts IV and V (rape) and VIII and IX (Pen. Code, § 288a violation) were not affected by the sentencing on the kidnaping to commit robbery counts.

■ Rape and Penal Code section 288a violations against different victims, regardless of their proximity in time or place, constitute separately punishable offenses. (*People* v. *Ridley,* 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124]; *People* v. *Young,* 224 Cal.App.2d 420, 425 [36 Cal.Rptr. 672].) Such offenses, successively perpetrated against the same victim, are also separately punishable. (*People* v. *Hicks,* 63 Cal.2d 764, 766 [48 Cal.Rptr. 139, 408 P.2d 747]; *People* v. *Gomez,* 252 Cal.App.2d 844, 859-860 [60 Cal.Rptr. 881].)

■ Penal Code section 669, provides, as pertinent, "When any person is convicted of two or more crimes . . . if the punishment for any of said crimes is expressly prescribed to be life imprisonment . . . then the terms of imprisonment on the other convictions . . . shall be merged with and run concurrently with such life term. . . ." (See also, *In re Ward,* 64 Cal.2d 672, 678 [51 Cal.Rptr. 272, 414 P.2d 400].) Accordingly, the two life sentences imposed on Thomas for kidnaping to commit robbery (counts VI and VII; Pen. Code, § 209) may not run consecutively with each other or with any other sentence.

The superior court will modify the judgment and commitment by eliminating the sentences imposed on counts II and III, and by ordering the sentences on counts VI and VII to run concurrently with each other and with all other sentences; as so modified the judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1970.