STATE of Tennessee, Appellee,

v.

Ronnie ROLLINS, Appellant.

No. 79–21–III.

Court of Criminal Appeals of Tennessee,
At Nashville.

June 18, 1980.

Gordon W. Smith, Asst. Atty. Gen., Nashville, J. William Pope, Dist. Atty. Gen., Pikeville, Mike Caputo, Asst. Dist. Atty. Gen., Jasper, for appellee.

Robert S. Peters, Winchester, for appellant.

OPINION

DAUGHTREY, Judge.

The appellant–defendant, Ronnie Rollins, was convicted of robbery and of kidnapping for the purpose of committing robbery, and received concurrent sentences of five to fifteen years and twenty years, respectively. On appeal he challenges the sufficiency of the convicting evidence and the correctness of the trial court's kidnapping instruction under T.C.A. § 39–2603. We find no reversible error, and we therefore affirm the conviction.

The proof establishes that on the evening of December 11, 1978, the defendant went to the Palmer, Tennessee home of a friend, David Morrison, and asked Morrison to take him home to nearby Whitwell, Tennessee. Morrison drove Rollins to his house in Whitwell and waited outside some 30 minutes before Rollins returned with various tools, including a sledge hammer, some crowbars and a hammer, a coat, and pair of gloves. The two men bought and drank some beer in Whitwell, and, riding around the countryside, they stopped at the home of acquaintances where they drank more beer and smoked marijuana. From there they continued drinking and driving around, apparently aimlessly, until they stopped at a graveyard in Palmer at about 10:00 p. m. to urinate. At this point the defendant began to talk about robbing a convenience market located just down the road from the graveyard. Morrison responded that he wanted nothing to do with a robbery and refused Rollins' request to wait for him. Rollins then left Morrison's car, stuffing a crowbar inside his fatigue jacket and donning a ski mask and gloves. As Morrison watched, Rollins approached the market on foot. The last thing Morrison saw as he drove away from the area was the store lights going out.

Vicky Kilgore was clerk of the convenience store on December 11. Accompanied by her boyfriend, James Knight, she closed up the market at 10:00 p. m. on that evening, putting the day's proceeds of $300.00 in the box on the front seat of her car, which Knight was driving. As they pulled away from the market, Kilgore saw a man coming toward the vehicle and realized that he was wearing a ski mask. The masked man pulled open the door on the passenger side and ordered Kilgore to move over. When she hesitated, asking who he was, the intruder announced that it did not matter, pushed her over and ordered Knight to drive away, gesturing for him to take the opposite direction down the Chattanooga highway. Both victims later testified that the robber appeared to be intoxicated.

Fearful, Knight drove for another quarter mile or so, when the masked man told him to pull off the road. The robber ordered Knight and Kilgore to get out of the car or be killed, and they complied. As Kilgore left the automobile, the robber grabbed her purse, which contained $300.00 of her own money. He then drove off, and Kilgore and Knight returned to the market on foot.

In the meantime, after abandoning Rollins to his venture Morrison had driven

from the graveyard to the home of a family friend. Seeking refuge, he told this witness that some "crazy guy was down there" and that he, Morrison, was scared and "wanted no part of it." Morrison spent part of the night at his friend's house, leaving between 3:00 and 3:30 a. m. Police later searched Morrison's car and found three more ski masks, gloves and a coat, and various tools, all of which Morrison said belonged to Rollins.

When Rollins was arrested at his home in Whitwell, he was hiding under his bed. He acknowledged that the coat found in Morrison's car was his, but denied ownership of the ski masks and further denied any connection with the robbery of Kilgore and Knight.

Kilgore's stolen automobile was later recovered in an adjoining county. It had been burned, and both the market proceeds and Kilgore's purse were missing.

Kilgore identified Rollins at trial as the masked man who had robbed her in December 1978. She admitted that she had been unable to identify him by voice at a "voice lineup" held soon after he was arrested.

The defendant did not take the stand at trial. He offered as witnesses his mother, who said there had never been any ski masks in their house, and a friend, who said that he was near the convenience market on the night in question, that he looked up and saw Kilgore and Knight drive away, and that he did not see a third person in their automobile.

On appeal the defendant does not seriously dispute the evidence of a robbery but contends that the proof is not sufficient to support his conviction for kidnapping for robbery. That offense is prohibited under the terms of T.C.A. § 39–2603, which at the time of this incident provided:

> Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps, or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or to exact from relatives or friends of such person any money, or valuable thing, *or any person who kidnaps or carries away any individual to commit robbery*, or any person who aids or abets any such act, is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state penitentiary for life or for a term of years not less than twenty (20), without possibility *of parole, at the discretion of the jury trying the same* (emphasis supplied).

The defendant's attack on his conviction for kidnapping for robbery appears to be two-fold. First, he argues that the removal of the victims in this case was only incidental to the robbery itself—that it occurred over a short distance and brief period of time, and that it did not substantially increase the potential harm to the victims—and thus did not give rise to an offense separate from the robbery itself. In support of this theory, he cites *People v. Timmons*, 4 Cal.3d 411, 93 Cal.Rptr. 736, 482 P.2d 648 (1971), and he relies on *Annotation*, 43 A.L.R.3d 699 (1972) for the proposition that where the movement of the victim is merely incidental to the robbery and where there is no harm to the victim, the temporary seizure or detention of the victim is generally held not to be kidnapping.

A review of the cases collected in the annotation indicates that a number of courts have held that the forced movement of a crime victim during the course of a crime which is merely incidental to the perpetration of the crime, as from one room of a house to another, is not kidnapping if there is no substantially increased risk of harm over and above that necessarily present in the crime of robbery itself. *See, e. g., People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969); *People v. Williams*, 2 Cal.3d 894, 88 Cal.Rptr. 208 (1970), *cert. denied* 401 U.S. 919, 91 S.Ct. 903, 27 L.Ed.2d 821 (1971). On the other hand, it has also been held that the movement of robbery victims from a well lighted

public street into a nearby dimly lighted alley is sufficient to sustain a conviction for kidnapping to commit robbery, on the theory that such asportation enables the robber to accomplish his purpose with less probability of apprehension and subjects the victims to an increased risk of violence and injury. *People v. Thomas*, 3 Cal.App.3d 859, 83 Cal.Rptr. 879 (1970).

In applying the "substantial increase of risk" analysis, the courts have found it necessary to examine each case on its facts. Thus, in *People v. Timmons, supra*, cited by the defendant, the California court held that the robber's action in forcing the driver of a car to drive five city blocks in broad daylight, during which time the robbery was accomplished, was insufficient to support a separate kidnapping conviction. However, the Court carefully pointed out that "[t]o avoid misunderstanding, we reiterate that in a different set of circumstances a movement of five city blocks might well 'substantially' increase the risk and thereby expose the robber to a prosecution for kidnapping." 93 Cal.Rptr. at 739, fn.2, 482 P.2d at 651, fn.2.

■ We conclude that there was a substantially increased likelihood of harm to the victims in this case when the defendant, in a drunken condition and acting under the influence of marijuana, ordered them to drive away from the market and then forced them out of their car and onto a highway in the dark of night. When he left Knight and Kilgore stranded on the side of the road, he certainly decreased the possibility of his apprehension and at the same time subjected them to increased risk of harm. *See People v. Thomas, supra*. Moreover, the proof before us shows clearly that the defendant committed the very act prohibited by § 39–2603, *i. e.* that he carried away individuals with the intent to rob them, and subsequently did rob them, taking property belonging to the convenience market, Kilgore's purse, and her automobile. Finally, it is clear that the act of kidnapping was complete when the robbery

occurred. *Compare People v. Timmons, supra.*

Next the defendant contends that the State failed to prove he had the necessary intent to kidnap, as required by *Brown v. State*, 574 S.W.2d 57 (Tenn.Cr.App.1978). The issue in *Brown* was whether the State had established all the essential elements of the offense of kidnapping under T.C.A. § 39–2601, especially those of asportation and secrecy. In delineating the requirements of a kidnapping conviction under T.C.A. § 39–2601, the *Brown* court noted that the controlling issue is the perpetrator's intent. 574 S.W.2d at 62.

■ Here, of course, we deal with the statutory offense of kidnapping for robbery, T.C.A. § 39–2603. There is no dispute as to the existence of asportation in this case, since the proof shows clearly that the victims were forcibly moved at least a quarter of a mile from their original point of contact with the defendant. Moreover, the specific intent required under T.C.A. § 39–2603 is the intent to *rob*, accompanied by an asportation. Both from the defendant's actions and from his statements to Morrison prior to the offense, the record clearly establishes that he approached the victims in this case and forced them away from the market with an intent to rob them. The proof is thus sufficient to sustain the conviction under Rule 13(e), Tennessee Rules of Appellate Procedure, and *State v. Patton*, 593 S.W.2d 913, 916–17 (Tenn.1979).

Finally, the defendant alleges that the trial court's instruction to the jury was improper because it failed to define "kidnapping." Tracking the instruction suggested by the Tennessee Pattern Jury Instructions, T.P.I.–Crim. 21.04, the trial judge charged the jury:

Any person who kidnaps or carries away any individual for the purpose of committing robbery, or any person who aids or abets any such act, is guilty of a felony.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt that:

1. the defendant kidnapped or carried away the alleged victim from one place to another, however slight the distance; and

2. the defendant did so for the purpose of committing robbery.

Robbery is defined as the felonious and forcible taking of the goods or money of any value from the person or presence of another, by violence or putting the person in fear.

■■ In essence, the charge defines the offense prohibited by T.C.A. § 39–2603 as the carrying away of an individual from one place to another, however slight the distance, for the purpose of committing a robbery. The defendant made no request for an additional charge defining the term "kidnapping", and we conclude that the instruction as given, although it could have been fuller, was sufficient to convey to them the essential elements of the offense with which the defendant was charged. Under Tennessee law mere meagerness is not reversible error, in the absence of a special request for an additional charge. *Meade v. State*, 484 S.W.2d 366, 368 (Tenn. Cr.App.1972).

■ Moreover, as the State points out, our courts have held that where words and terms are in common use and can be understood by persons of ordinary intelligence, it is not necessary, in the absence of anything in the charge to obscure their meaning, for the trial court to define or explain them. *Robinson v. State*, 513 S.W.2d 156, 157–58 (Tenn.Cr.App.1974) ("aiding and abetting"); *Cook v. State*, 506 S.W.2d 955, 958–59 (Tenn.Cr.App.1973) ("sodomy"). The State argues that the term "kidnap," in ordinary usage, connotes the carrying away of a person against his will by force or fraud, a common definition which is not inconsistent with the statutory language of Tennessee's kidnapping statutes, T.C.A. §§ 39–2601 *et seq.* This argument appears to be validly applied to the T.C.A. § 39–2603 charge before us, in light of the trial court's instruction. We note that the court emphasized the forcible nature of robbery in conjunction with the kidnapping for robbery instruction, and we conclude that the instruction, taken as a whole, was sufficient to sustain a valid conviction under T.C.A. § 39–2603.

Finding no reversible error in the record, we affirm the judgment of the trial court.

WALKER, P. J., and SCOTT, J., concur.