IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2002

**STATE OF TENNESSEE v. OLEAN W. THOMPSON**

**Direct Appeal from the Criminal Court for Williamson County**
**No. I-201-49     Donald P. Harris, Judge**

---

**No. M2001-03093-CCA-R3-CD - Filed July 2, 2003**

---

The defendant Olean W. Thompson, pled guilty to theft of property $1,000 or more in value and aggravated robbery. Pursuant to a bench trial, he was found guilty of his four remaining indicted charges, four counts of especially aggravated kidnapping. The trial court then sentenced the defendant to serve two years for his theft conviction, eight years for his robbery conviction, and twenty years for each of his kidnapping convictions. The court then ordered the defendant to serve these sentences concurrently, resulting in a twenty-year aggregate sentence. The defendant now appeals his convictions and sentence, claiming that his due process rights were violated by his four convictions for especially aggravated kidnapping and that the trial court erred by imposing excessive sentences for each of his kidnapping convictions. After a thorough review of the record, we find that none of the defendant's allegations merit relief and accordingly affirm the defendant's convictions and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

John H. Henderson, District Public Defender, Franklin, Tennessee, for the appellant, Olean W. Thompson.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; Ron Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual Background

On January 25, 2001 at approximately 9:55 p.m. shortly before closing time, the defendant and another male entered a Burger King location in Brentwood, Tennessee wearing stocking caps on their heads and bandanas across their faces. There were four Burger King employees present when the defendant and his accomplice entered the store, including Lara Carter, the assistant manager, and three male employees. The defendant told one of the three male employees to bind the others with tape while his accomplice held the three at gun point. While his accomplice was detaining the other employees, the defendant pointed his gun at Ms. Carter and ordered her to place all the money from the cash registers into a bag. Ms. Carter noted that the defendant evidenced some familiarity of the layout of a Burger King restaurant, including the location of a receptacle beneath each register in which the employees deposited all large bills. After having collected all of the cash, the defendant directed Ms. Carter into the restaurant's office where he pulled the phone cord from the wall and pocketed it. He then directed his accomplice to bind Ms. Carter.

As he left the building, Ms. Carter looked at the defendant directly in the face and recognized him as Olean Thompson, a former Burger King employee. The defendant's sister and father had both worked for Burger King under Ms. Carter's management. She had interacted with him when he would visit his family members at the restaurant. Ms. Carter had also interacted with the defendant while substitute-managing another Burger King location in which the defendant was employed.

After she was bound, Ms. Carter began working to free herself, which she was able to do several minutes after the defendant and his accomplice left the restaurant. She then freed another employee and directed him to free the others. She approximates that she and her fellow Burger King employees were bound for at least ten minutes. During that time, they were unable to crawl, walk, or move. After she freed herself, Ms. Carter reconnected her office phone by using another phone cord and then contacted the police. Once the police arrived, Ms. Carter identified the defendant as one of the assailants. Moreover, she was able to provide the police with the defendant's contact information that she had on file from a job application.

Pursuant to this information, the police searched the defendant's residence. They discovered a partially used roll of gray duct tape next to his bed. The victims of the robbery identified it as similar to the tape used to bind them. The police also discovered a pair of the defendant's shoes whose prints matched shoe prints taken at the crime scene. The police subsequently arrested the defendant, who later confessed to the crime. This confession was introduced into evidence at trial.

After hearing all of the evidence summarized above, the trial court found that the evidence was sufficient to support the theft and robbery convictions to which the defendant had pled guilty. The trial court further found the defendant guilty of four counts of especially aggravated robbery.

As noted above, the defendant now appeals his convictions and his sentence. For the following reasons, we find that the trial court correctly convicted and sentenced the defendant.

## **<u>Sufficiency Challenge</u>**

At the conclusion of the state's proof, the defendant moved for a judgment of acquittal on his four especially aggravated kidnapping charges. The trial court, the state, and defense counsel discussed the issue in terms of the due process implications per <u>State v. Anthony</u>, 817 S.W.2d 299 (Tenn. 1991), and then the trial court denied the defendant's motion based first upon the sufficiency of the state's evidence and second upon a finding that the kidnapping convictions did not violate the defendant's constitutional guarantees. <u>See</u> Tenn. R. Crim. P. 29.

The due process concerns addressed in <u>Anthony</u> do not arise until after the accused is convicted of both kidnapping and robbery. <u>See</u> <u>State v. Turner</u>, 41 S.W.3d 663, 671 (Tenn. Crim. App. 2000). Although a robbery offense, by its nature, necessarily involves some degree of restraint or detention of the victim, the statutory elements of aggravated robbery and especially aggravated kidnapping are distinct and separate. <u>Anthony</u>, 817 S.W.2d at 303. However, even if we determine that the defendant's dual convictions violate due process per <u>Anthony</u>, our determination does not presume that the evidence was insufficient to support the defendant's kidnapping convictions as a matter of law. <u>See</u> <u>id.</u> at 306. "Rather, the <u>Anthony</u> rule means that separate convictions cannot stand because, even though the evidence is sufficient to support both convictions, principles of due process would be offended by two separate convictions." <u>Turner</u>, 41 S.W.3d at 671. Therefore, we will first review the trial court's decision that the evidence was sufficient to sustain the defendant's convictions for especially aggravated kidnapping independent of due process considerations.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. <u>State v. Cazes</u>, 875 S.W.2d 253, 259 (Tenn. 1994); <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. <u>Id.</u> The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. <u>See</u> Tenn. R. App. P. 13(e); <u>Harris</u>, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." <u>See</u> <u>Tuggle</u>, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. <u>State v. Morgan</u>, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." <u>Matthews</u>, 805 S.W.2d at 779.

Especially aggravated kidnapping is defined, in relevant part, as the false imprisonment of another accomplished with the use of a deadly weapon. See Tenn. Code Ann. § 39-13-305(a)(1). An individual falsely imprisons another when he or she "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Id. § 39-13-302(a). This definition does not require that an accused move an individual a particular distance or detain an individual for a certain amount of time in order to "substantially interfere" with that individual's liberty. See State v. Dixon, 957 S.W.2d 532, 535 (Tenn. 1997). In the instant case, the four Burger King employees present during the robbery were bound at their wrists and ankles pursuant to the defendant's directions. They were bound for only ten minutes because one of the employees was able to extricate herself from her bindings once the defendant and his accomplice left the restaurant. During the time in which they were bound, the employees were unable to walk, crawl, or move. Based on these facts, we agree with the trial court's ruling that the evidence is sufficient to support a finding that the defendant knowingly confined these four employees by having them bound in order to "substantially interfere" with their liberty.

## Due Process Considerations per State v. Anthony

The defendant complains that his four especially aggravated kidnapping convictions violate his due process rights because the kidnapping of the four victims was incidental to his robbery conviction and cites Anthony in support of his argument. See State v. Anthony, 817 S.W.2d 299 (Tenn. 1991). The state counters that the trial court correctly found that the kidnapping convictions were constitutional under Anthony.

In Anthony, the Tennessee Supreme Court stated that before a defendant may be convicted of a kidnapping charge, the trial court must determine

> whether the confinement, movement, or detention [involved in the individual's case] is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction.

Id. at 306. In addition, our supreme court instructed "that one method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the [attending] crime . . . itself.'" Id. (quoting State v. Rollins, 605 S.W.2d 828, 830 (Tenn. Crim. App. 1980)).

In State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), the supreme court further refined the approach to be taken when analyzing these issues. See id. at 535. The reviewing court must ascertain "whether the movement or confinement was beyond that necessary to consummate the act of" the accompanying offense. Id. "If so, the next inquiry is whether the additional movement or

confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id. The Dixon court clearly stated that the intent is not to provide a defendant with "a free kidnapping merely because he [or she] also committed" the primary offense, but rather is merely to "prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of" the accompanying crime. See id. at 534.

We find that the defendant's detention of the four employees was not just incidental to his robbery of the restaurant. The defendant did not merely control the employees by holding them at gunpoint, but instead he had both their wrists and ankles bound with duct tape, immobilizing them for a period which extended the period of time in which the robbery took place. Moreover, the defendant bound Lara Carter's writs and ankles after he had committed the robbery in question but before he fled the crime scene, indicating that he did not immobilize her merely to allow him to complete the robbery of the restaurant. See, e.g., State v. William Rhea Jackson, No. M2002-00762-CCA-R3-CD, 2003 WL 1563663, at *15 (Tenn. Crim. App. at Nashville, Mar. 27, 2003) (finding that the defendant's kidnapping conviction was constitutional where the defendant's action of binding his victim after his completion of several crimes indicated that the defendant bound his victim in order to facilitate flight and avoid detection); cf. Anthony, 817 S.W.2d at 307 (noting that the defendant's detention of three restaurant employees during the robbery of the restaurant was incidental to the robbery where the defendant held the employees at gunpoint during the commission of the offense). Furthermore, as the Dixon court noted when revisiting State v. Anthony, "any restraint in addition to that which is necessary to consummate [the accompanying felony charge] may support a separate conviction for kidnapping." See Dixon, 957 S.W.2d at 534-35 (emphasis added). We find that the defendant's act of having the four employees bound with duct tape constitutes a form of restraint additional to the restraint necessary to complete the commission of the robbery.

Turning next to the second prong of our analysis, we must now determine whether this additional restraint "(1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id. at 534. As noted above, the defendant instructed that the three male employees be bound shortly after he and his accomplice entered the restaurant. After he had collected all of the cash on the premises, the defendant directed his accomplice to bind Ms. Carter. We conclude that the binding of the victims at least hampered the victims in escaping or summoning help; more patently, the movement decreased the intruders' risk of detection. The defendant's intent to avoid detection is also evident from his removal of the restaurant office phone cord prior to his escape. Furthermore, the actions of binding the victims' ankles and wrists with duct tape rendered the victims defenseless to any assaults that the intruders might have inflicted upon them. Accordingly, we find that this confinement increased the risk of harm to the victims. Thus, the defendant's aggravated kidnapping convictions do not violate due process, and this issue therefore lacks merit.

**Sentencing Challenge**

The defendant also challenges the trial court's imposition of a twenty-year sentence for each of his four especially aggravated kidnapping convictions, arguing that these sentences are excessive and should not exceed fifteen years each. The state responds that while the trial court improperly applied one enhancement factor, the evidence adequately supports the defendant's resulting sentence.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. See Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

Here, the defendant challenges the length of his four especially aggravated kidnapping convictions. The sentencing range for especially aggravated kidnapping for a Range I offender is fifteen to twenty-five years. See Tenn. Code Ann. § 40-35-112(a)(1). Because especially aggravated kidnapping is a Class A felony, the starting point for sentencing determinations is the middle of the range. See id. § 40-35-210(c). The trial court classified the defendant as a Range I offender, and the trial court was required to balance any mitigating and enhancement factors against the twenty-year midpoint.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. See Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

We begin our analysis of this issue by first reviewing the trial court's application of three enhancement factors, namely (1) the defendant's prior criminal convictions and behavior, (2) his previous history of unwillingness to comply with the terms and conditions of a sentence involving release into the community, and (3) his abuse of a position of private trust. Turning to the first applied enhancement factor, the defendant's history of criminal convictions or behavior in addition to those necessary to establish his range, we find that there is sufficient evidence in the record to support the application of this factor. See Tenn. Code Ann. § 40-35-114(2) (Supp. 2002). The

defendant has three prior criminal convictions, and the testimony of several witnesses indicates that the defendant has a history of illegal drug abuse. Thus, we find that the trial court appropriately applied this factor to the defendant's sentences.

Next, we find that the trial court inappropriately applied the enhancement factor allowing consideration of the defendant's history of unwillingness to comply with the terms of a sentence allowing release into the community. See id. § 40-35-114(9) (Supp. 2002). The record reflects that the trial court applied this factor because the defendant was serving a probationary sentence at the time he committed the present offenses. A trial court may not apply this enhancement factor merely where the defendant committed the instant crime while serving a sentence allowing release into the community. See State v. Adams, 45 S.W.3d 46, 60 (Tenn. Crim. App. 2000). Rather, the defendant must have exhibited a history of such behavior separate from the crime at issue in order for this factor to be appropriately applied. See id. Thus, the trial court erred by applying this factor to the defendant's convictions.

However, although the trial court did not apply this factor to enhance the defendant's sentences, the defendant's sentences could have been enhanced by a finding that the defendant acted as a leader in the commission of the instant offenses. See id. § 40-35-114(3) (Supp. 2002). The witnesses to the incident all recounted that the defendant's accomplice acted at his instruction. The defendant directed his accomplice to bind the restaurant employees and hold them at gunpoint while he collected the cash from the registers. He displayed knowledge of the restaurant's set-up and practices and accordingly gave Ms. Carter specific instructions about how to gather the available cash. If a trial court fails to apply a relevant enhancement factor, this Court may apply that enhancement factor to the defendant's conviction pursuant to our de novo review of the trial court's sentencing determination. See Adams, 864 S.W.2d at 34. Thus, because we find this enhancement factor applicable to the defendant's sentence, we find that the trial court's enhancement of the defendant's sentence on the basis that the defendant's committed the instant crimes while serving a probationary sentence is harmless error.

Finally, we find that, under the circumstances presented in the instant case, the trial court erroneously applied the enhancement factor that the defendant abused a position of private trust in the commission of the offense See Tenn. Code Ann. § 40-35-114(16) (Supp. 2002). The application of this factor requires, first a finding that the defendant occupied a position of either public or private trust and, second that the defendant "abused" that position in the commission of that offense. See State v. George Dennis Fields, No. 01C01-9801-CR-00031999, 1999 WL 275157, at *5 (Tenn. Crim. App. at Nashville, May 6, 1999). This court has previously found that a defendant who steals from his or her employer has abused a position of private trust. See State v. Grissom, 956 S.W.2d 514, 518 n.5 (Tenn. Crim. App.1997); see also State v. Kavious L. Newsom, No. 02C01-9806- CR-00166, 1999 WL 588155, at *5 (Tenn. Crim. App. at Jackson, Aug. 6, 1999). We decline, however, to hold that without proof in some special continuing trust relationship between an employer and former employee, the former employee continues to occupy a position of trust after the employment relationship has ended. Thus, application of this enhancement factor was inappropriate in this case.

Turning next to the applied mitigating factors, the trial court found two factors applicable to mitigate the defendant's sentence, (1) the defendant's lack of substantial judgement due to his youth and (2) his efforts to ensure that no one was seriously injured during the commission of the instant offenses. First, we find that the record supports a finding that the defendant's age, nineteen years old, contributed to his lack of substantial judgement. See Tenn. Code Ann. § 40-35-113(6). Second, the record also supports a finding that the defendant took steps to minimize the risk of injury during the robbery. See id. § 40-35-113(13). The defendant told the police that he had committed the robbery with the use of an unloaded shotgun and that he altered the shotgun to make it inoperable before he discarded it. The trial court appears to have accredited this testimony, and thus we find that the application of this mitigating factor was justified.

The defendant argues that the trial court erroneously failed to apply several other applicable mitigating factors to his sentence. He alleges that the trial court should have mitigated his sentence based on (1) his claim that he committed the instant offense out of a desire to support his family, (2) his characterization of the circumstances surrounding his crime as so unusual as to indicate that he did not have a sustained intent to violate the law, and (3) his expressed remorse and responsibility for the commission of these offenses. However, the defendant cites no argument in support of his claims and has therefore waived their consideration on appeal. See Tenn. Ct. Crim. App. 10(b); Tenn. R. App. 27(a)(7). Moreover, the evidence introduced at the sentencing hearing does not preponderate against the trial court's refusal to apply these factors to the defendant's sentence. The evidence introduced at the sentencing hearing demonstrates that the defendant was at least partially motivated to commit these offense in order to support his illegal drug habit and that the defendant methodically planned the commission of these crimes. Furthermore, the defendant did not make any statements on his own behalf either at his trial, in his pre-sentence report, or at his sentencing hearing, making it difficult for a court to determine that the defendant is indeed remorseful for his actions. Accordingly, we find that the trial court did not err by refusing to apply these three proposed mitigating factors to the defendant's sentence.

In sum, although we find that the trial court erroneously applied two enhancement factors in sentencing the defendant, the two enhancement factors that are properly applicable to the defendant's sentence are on balance with the applicable mitigating factors sufficient to warrant imposition of the sentence imposed.

## Conclusion

For the foregoing reasons, we find that none of the defendant's allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE