IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
June 7, 2005 Session

## STATE OF TENNESSEE v. LONNIE M. MACLIN

**Appeal from the Criminal Court for Shelby County**
**No. 03-00440     Chris Craft, Judge**

**No. W2004-00468-CCA-R3-CD  - Filed October 17, 2005**

The Appellant, Lonnie M. Maclin, was convicted by a Shelby County jury of first degree felony murder, attempted aggravated robbery, misdemeanor reckless endangerment, especially aggravated kidnapping, aggravated robbery, reckless aggravated assault, and two counts of aggravated assault. As a result of these convictions, Maclin received an effective sentence of life imprisonment.  On appeal, Maclin raises three issues for our review:  (1) whether the indictment was invalid for failure to provide "adequate notice of the offenses charged in the indictment, or the court erred in the instruction to the jury"; (2) whether the evidence is sufficient to support his conviction for felony murder; and (3) whether his conviction for especially aggravated kidnapping violates *State v. Anthony*, 817 S.W.2d 299 (Tenn. 1991).  After review of the record, we affirm the judgments of conviction.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the Appellant, Lonnie M. Maclin.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tim Hoover and Michelle Parks, Assistant District Attorney Generals, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On the afternoon of September 25, 2002, the Appellant spoke with Derek Robinson, an admitted drug dealer, about purchasing some marijuana.  After Robinson left the area, the Appellant was overheard discussing a "stang," a term which is street slang for committing a robbery.  Later that evening, at approximately 10:00 p.m.,  Robinson, along with LeKeshia Jones, her sister, Kaneshia

Jones, and Kaneshia's infant, went to the home of Karen Arnold, four or five houses down from the Appellant's home on Arrendale, to sell drugs. The Jones sisters remained in the car during the transaction. Robinson returned to the car and, just as he was getting into the car, the Appellant, dressed in dark clothing, approached him. After Robinson informed the Appellant that he had no marijuana to sell, the Appellant asked for a ride up the street. When Robinson told the Appellant that he wanted to take the Jones sisters home first, the Appellant displayed a gun, pointed it at Robinson's face, and stated "bitch, drop it all." The Appellant then patted down Robinson's pants and grabbed a ring from Robinson's hand.

At this point, the Appellant ordered everyone out of the car, waving his gun around as he spoke. The Jones sisters immediately got out of the car. As Robinson attempted to slide out the passenger side door, the Appellant hit Robinson with the gun. The Appellant, now driving Robinson's 1981 brown Cadillac, proceeded down the street to Robinson's home, where he parked in the driveway. Robinson informed the Appellant that he was not going inside his home because his kids were awake. The Appellant responded, "who said we're going to your house, you know what I want."

The Appellant then removed Robinson from the car and escorted him next door to the home of Hashim McFee. After repeated knocking, McFee opened the door to find the Appellant pointing a gun at Robinson, whom the Appellant pushed inside when the door opened. The Appellant repeatedly asked "where's the dope," continually becoming more aggressive. McFee told the Appellant that the drugs were in a closet, and the three of them, with the Appellant still displaying the gun, proceeded down a hallway towards the back bedroom. At some point, McFee winked at Robinson as if to indicate that he was going to do something. Inside the room, McFee moved towards the closet as if to open it; however, he swung around and grabbed the Appellant's arm. A struggle ensued, and two shots were fired in rapid succession. McFee was struck twice and died as a result of the wounds. "In split seconds," the Appellant fired a third shot at Robinson. The Appellant then fled the scene in Robinson's Cadillac. The Jones sisters called 911.

At approximately the same time, Latoya Echols was standing at the gas pumps of a nearby Circle K convenience store. Just as she finished pumping the gas, the Appellant drove through the parking lot at a high rate of speed in Robinson's car and struck Ms. Echols' car. A Memphis City police officer who was stopped at the Circle K witnessed the event. The Appellant, seeing the officer, proceeded to run. The Appellant was eventually apprehended and placed under arrest. No weapons, money, or drugs were found when the Appellant was captured. However, the ring taken earlier from Robinson was found in the car.

On January 28, 2003, a Shelby County grand jury returned an eight-count indictment charging the Appellant with: (1) felony murder of Hashim McFee; (2) attempted aggravated robbery of McFee; (3) attempted first degree murder of Derek Robinson; (4) especially aggravated kidnapping of Robinson; (5) aggravated robbery of Robinson; (6) aggravated assault of Lakeshia Jones; (7) aggravated assault of Kenisha Jones; and (8) aggravated assault of Latoya Echols. After a jury trial, which began on January 12, 2004, the Appellant was convicted of: (1) first degree felony

murder; (2) attempted aggravated robbery; (3) reckless endangerment; (4) especially aggravated kidnapping; (5) aggravated robbery; (6) two counts of aggravated assault; and (7); reckless aggravated assault. The jury sentenced the Appellant to life imprisonment for the first degree murder conviction. The trial court subsequently sentenced the Appellant to three years for attempted aggravated robbery, eleven months and twenty-nine days for reckless endangerment, fifteen years for especially aggravated kidnapping, eight years for aggravated robbery, three years for each aggravated assault, and two years for reckless aggravated assault. All sentences were ordered to be served concurrently with the Appellant's sentence of life imprisonment. Subsequently, the Appellant filed a motion for new trial, which was denied by the trial court on February 13, 2004. This appeal followed.

**Analysis**

On appeal, the Appellant has raised three issues for our review: (1) whether the first degree felony murder indictment was insufficient in that it failed to provide notice that the Appellant was charged with felony murder in the perpetration of an attempted robbery, as opposed to the perpetration of a robbery, and whether the court erred in charging the jury regarding felony murder; (2) whether the trial court erred in finding the evidence sufficient to support his conviction for felony murder; and (3) whether his conviction for especially aggravated kidnapping violates *State v. Anthony*.

## I. Sufficiency of the Indictment/Jury Charge

The Appellant argues that the trial court erred "in charging the jury with T.C.A. § 39-13-202(a)(2) in its entirety even though the Indictment relied upon the 'attempt to perpetrate' language of the statute[.]" Although the Appellant frames the issue as a jury instruction error, his argument focuses entirely upon his assertion that he was not provided adequate notice of the offense charged in the indictment. In support, he argues that the indictment charged him with felony murder during the perpetration of a robbery, while the proof at trial established that the felony murder occurred during the perpetration of an <u>attempted</u> robbery.

Under both the United States and the Tennessee Constitutions, a charging instrument, such as an indictment, must inform the accused of "the nature and cause of the accusation." *See* U.S. CONST. amend. VI; TENN. CONST. art. I, § 9. In addition to these constitutional guarantees, the form of an indictment in Tennessee is prescribed by statute:

> The indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment; . . .

Tenn. Code Ann. § 40-13-202 (2003).

Thus, a criminal indictment must include a sufficient description of the offense to ensure that the defendant understands the nature of the charge. *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S. Ct. 2781, 2786 (1979). The essential functions of the indictment are to provide notice of the charge, enable entry of a proper judgment upon conviction, and protect against double jeopardy. *State v. Byrd*, 820 S.W.2d 739, 741 (Tenn. 1991). Indictments need not conform to strict pleading requirements. *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). Historically, strict pleading in indictments was required because offenses existed at common law which did not have elements that were easily ascertainable by reference to a statute. *Id*. at 728. Because such common law offenses no longer exist, to hold on to strict pleading requirements would be embracing "technicalities that are empty and without reason." *Id*. (quoting *State v. Cornellison*, 59 S.W.2d 514, 515 (Tenn. 1933)); *see also State v. Hammonds*, 30 S.W.3d 294, 299 (Tenn. 2000). "[W]e now approach 'attacks upon indictments, . . . from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" *Hill*, 954 S.W.2d at 728 (quoting *United States v. Purvis*, 580 F.2d 853, 857 (5th Cir. 1978)).

It has been held that an indictment which references the statute defining the offense is sufficient and satisfies the constitutional and statutory requirements of *Hill*, giving the accused sufficient notice of the charged offense. *See State v. Sledge*, 15 S.W.3d 93, 95 (Tenn. 2000); *State v. Carter*, 988 S.W.2d 145, 149 (Tenn. 1999); *Ruff v. State*, 978 S.W.2d 95, 100 (Tenn. 1998). Additionally, an indictment need not allege the specific theory or means by which the State intends to prove each element of an offense. *See Hammonds*, 30 S.W.3d at 302; *Wyatt v. State*, 24 S.W.3d 319, 324 (Tenn. 2000); *State v. Lemacks*, 996 S.W.2d 166, 172-73 (Tenn. 1999). Indeed, indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements. *Hammonds*, 30 S.W.3d at 300.

The indictment in this case charged that the Appellant:

> on September 25, 2002, in Shelby County, Tennessee, and before the finding of this indictment, did unlawfully and with the intent to commit Robbery kill HASHIM MCFEE during the perpetration of Robbery, in violation of T.C.A. 39-13-202, against the peace and dignity of the State of Tennessee.

Applying the applicable law to this case, we conclude that the language of the indictment provided the Appellant with ample notice of the offense charged, including felony murder during the perpetration of an attempted robbery. The indictment contained a specific reference to the statute allegedly violated. Moreover, Count 2 of this indictment charged the Appellant with the attempted robbery of McFee on the date in question. In our view, the content of the indictment sufficiently apprised the Appellant of the nature of the charges against him so as to enable the entry of proper judgments and to protect against double jeopardy. Moreover, with regard to the Appellant's argument that the trial court erred in its instruction of felony murder, the record demonstrates that

-4-

no error occurred.[1]  The jury was properly instructed that in order to convict of felony murder, the State was required to prove that the "killing was committed in the perpetration of or the attempt to perpetrate the alleged robbery."  Because the instruction does not infringe upon the jury's fact finding role of a contested issue at trial, no error is presented.  *See Neder v. United States*, 527 U.S. 1, 18, 119 S. Ct. 1827, 1838 (1999).

## II. Sufficiency of the Evidence

The Appellant argues that the evidence is insufficient to support his conviction for felony murder, asserting that the evidence presented supports, at best, only a conviction for voluntary manslaughter.  In considering this issue, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is  "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also* Tenn. R. App. P. 13(e).  Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992).  All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact.  *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).  This court will not reweigh or reevaluate the evidence presented.  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."  *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).  A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient.  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

The Appellant was convicted of first degree felony murder, which is defined in pertinent part by Tennessee Code Annotated section 39-13-202(a)(2) (2003) as a "killing of another committed in

---

[1]The trial court properly instructed the jury with regard to the offense of felony murder as follows:

> (1) That the defendant unlawfully killed Hashim McFee; and

> (2) That the killing was committed in the perpetration of or the attempt to perpetrate the alleged robbery; that is that the killing was closely connected to the alleged robbery and wasn't a separate and distinct and independent event; and

> (3) That the defendant intended to commit the alleged robbery.

> The intent to commit the underlying robbery must exist prior to or at the same time as the commission of the act or acts causing the death of the victim.  Proof that such intent to commit the underlying robbery existed before, or at the same time as, the act of killing is a question of fact to be decided by the jury after consideration of all the facts and circumstances.

the perpetration of or attempt to perpetrate any . . . robbery." Under the felony murder rule, it is immaterial whether the killing of the victim by the defendant was intentional or accidental, as the requisite intent for felony murder is the defendant's intent to commit the underlying felony. Tenn. Code Ann. § 39-13-202(b). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401 (2003).

Within his sufficiency argument, the Appellant also asserts that there was no evidence presented which establishes that the victim was killed during the perpetration of a robbery, as it was not shown that anything was taken. Thus, he asserts that a rational juror could not have concluded that a robbery had occurred. As discussed *infra*, we conclude that the trial court's instruction properly submitted to the jury the factual issue of whether "the killing was committed in the perpetration of or the attempt to perpetrate the alleged robbery." Thus, in order to convict of first degree felony murder, the jury was not required to find that the victim was killed during the perpetration of a robbery.

Clearly, probative evidence was presented at trial which would permit a rational juror to conclude that the Appellant killed McFee during the perpetration of an attempted robbery. Viewing the evidence in the light most favorable to the State, the proof established that the Appellant, armed with a weapon, entered the home of Hashim McFee demanding the drugs which he believed to be kept in the house. The Appellant, still pointing the loaded weapon at both McFee and Robinson, ordered them down a hall to the back bedroom to obtain the drugs. When McFee attempted to resist the Appellant, shots were fired, and McFee died. Regardless of whether the Appellant actually took anything from the home, obviously Mcfee was killed during the Appellant's attempt to perpetrate an aggravated robbery. This issue is without merit.

## III. *State v. Anthony*

Last, the Appellant argues that the trial court erred in failing to dismiss the especially aggravated kidnapping conviction pursuant to *State v. Anthony* because the crime was essentially incidental to the aggravated robbery offense. The Appellant asserts that "the movement of Derek Robinson to his house where the marijuana was thought to be stored was necessary to consummate the crime of Aggravated Robbery."

In *Anthony*, our supreme court addressed the issue of whether dual convictions for armed robbery and aggravated kidnapping violated the due process guarantees of Article I, section eight of the Tennessee Constitution. The court concluded that when a confinement, movement, or detention is "essentially incidental" to an accompanying felony, such as robbery or rape, it is not sufficient to support a separate conviction for kidnapping. *Anthony*, 817 S.W.2d at 306. In other words, before a defendant may be convicted of a kidnapping charge, the trial court must determine whether the confinement, movement, or detention was essentially incidental to the accompanying felony and was not, therefore, sufficient to support a separate conviction for kidnapping, or whether it was significant enough, in and of itself, to warrant independent prosecution and was, therefore, sufficient

to support such a conviction. *Id.* The court noted that "every robbery, by definition, involves some detention against the will of the victim, if only long enough to take goods or money from the person of the victim." *Id.* "[O]ne method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime . . . itself.'" *Id.* (quoting *State v. Rollins*, 605 S.W.2d 828, 830 (Tenn. Crim. App. 1980)).

In *State v. Dixon*, 957 S.W.2d 532 (Tenn. 1997), the court revisited the *Anthony* issue and held that the decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the intended crime. Accordingly, any restraint in addition to that which is necessary to consummate the intended crime may support a separate conviction for kidnapping. *Id.* at 535. In *Dixon*, the court established a two prong test for determining whether a separate conviction for kidnapping violates due process. First, the trial court must determine whether the movement or confinement was beyond that necessary to commit the accompanying felony. *Id.* If so, the court must then ascertain whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. *Id.*

After review, we conclude that the detention of Robinson was not merely incidental to the robbery. The indictment for aggravated robbery charged the Appellant with the taking of Robinson's car and his ring. The trial court found that:

> . . . in this case, the aggravated robbery was the robbery of his car. And after the robbery was complete and he had him in the car, he continued to put a gun on his head and take him to someone else's house to commit another crime. Because of that, the aggravated robbery and the especially aggravated kidnapping are not based on the same events.

The facts establish that the Appellant walked up to Robinson's car, which was occupied by Robinson and the Jones sisters. After a brief conversation, the Appellant displayed a gun, took possession of Robinson's vehicle, and proceeded to take a ring from Robinson's finger. At this point, the aggravated robbery was complete. However, as Robinson attempted to leave, the Appellant pulled Robinson back into the car, hit him with the gun, and proceeded to drive him down the street where he was forced to enter McFee's house. Thus, the confinement in this case was beyond that necessary to commit the accompanying felony of aggravated robbery. *See State v. Rashe Moore*, No. W2002-01195-CCA-R3-CD (Tenn. Crim. App. at Jackson, Dec. 3, 2003), *perm. to appeal denied*, (Tenn. Apr. 5, 2004) (concluding that where the robberies occurred before the victims were moved and confined in the kitchen, the convictions for especially aggravated kidnapping were not incidental to the accompanying felonies).

Turning to the second prong of the analysis, we conclude that the confinement of Robinson did in fact hinder him in summoning help; thus, the Appellant's risk of apprehension was lowered. It was not until after the Appellant left McFee's home that Robinson was able to contact police. Moreover, the continued movement and confinement of Robinson clearly increased his risk of harm.

Accordingly, we conclude that the Appellant's conviction for especially aggravated kidnapping did not violate due process. This issue is without merit.

## CONCLUSION

Based upon the foregoing, the judgment of the Shelby County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE