IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 12, 2005

**STATE OF TENNESSEE v. TRAVIS YOUNG**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-05458    W. Otis Higgs, Judge**

---

**No. W2004-02426-CCA-R3-CD  - Filed August 31, 2005**

---

The appellant, Travis Young, was convicted by a jury of especially aggravated kidnapping, especially aggravated robbery, and criminal attempt to commit second degree murder. As a result, the appellant was sentenced to an effective sentence of twenty (20) years. After the denial of a motion for new trial, the appellant appealed. On appeal, the following issues are presented for our review: (1) whether the evidence is sufficient to sustain the jury verdict; (2) whether the trial court improperly refused to dismiss the especially aggravated kidnapping charge; and (3) whether the trial court improperly instructed the jury with regard to especially aggravated kidnapping and especially aggravated robbery. After a thorough review of the record and applicable authority, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Phyllis Aluko, Assistant Public Defender, Memphis, Tennessee, for the appellant, Travis Young.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michael McCusker, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On the evening of February 21, 2003, the victim, Kelvin Bryant, was driving his ex-girlfriend's Ford Explorer through Memphis. The victim lived in Mississippi but owned several rental properties in Memphis and "periodically" drove around to each of his properties "just to make sure the tenants wasn't [sic] bothering my neighbors or anything of that nature." After the victim checked his last property on Elvis Presley Boulevard, around 9:00 p.m. that night, he drove down

Bellevue to find a store to buy some detergent. The victim went too far and got lost. He decided to turn around and find his way back to Union Street. As he was turning around, "somebody got in [the car] with [him]."

The carjacker entered the vehicle from the passenger side, and the victim noticed that the carjacker wore an olive green jacket and had "neatly groomed" facial hair. The victim saw a gun. The carjacker told the victim to drive to Dixie Homes, but the victim replied that he did not know how to get to Dixie Homes. The carjacker told him, "Oh, you know how to get to Dixie Homes," but the victim told the carjacker that he was not from the area and did not know how to get there. The carjacker then directed the victim to the area, using the gun as a pointer, then told the victim to park the truck. The carjacker was not satisfied with the way that the victim parked the truck, so he instructed the victim to "park the mother fucker right." The victim complied, and the carjacker demanded "everything that [the victim] had in his pockets." The victim handed over a few dollars, some Home Depot receipts, and some screws, explaining that he did not carry a wallet. The victim then remembered that he had an additional ten dollars ($10) in an envelope in another pocket, so he handed that over to the carjacker as the carjacker pointed the gun at the victim's face. As the victim handed over the envelope with the money inside, the carjacker "look[ed] inside the envelope, but he reached up with the hand that had the gun in it and turned the light on which was located on the mirror that's hanging on the dashboard." At that time, the victim grabbed the door handle, got out of the truck and began to run away.

As the victim was running, he "heard a gunshot and thought [he] felt just the air, you know, pass . . . along side me." About one hundred (100) yards later, the victim felt himself "slowing down" so he raised his arm up and realized that he was covered in blood. The victim tried to get help at a house, but no one came to the door. As the victim approached the house, the carjacker "approached [him] again and put the gun back on [him] and demanded the keys to the truck." The victim begged for his life, claiming that he did not know where the keys were. A car pulled up at that time, and the carjacker just "turned and walked away."

The victim was able to walk across the street to a Church's Chicken restaurant for help. The police and ambulance arrived and took the victim to the hospital where he received treatment for a gunshot wound to the back.

Several days later, the victim saw the face of the carjacker on television. The victim immediately notified the Memphis police.

The victim later thought to check the voicemail on his cell phone, which was taken by the carjacker the night of the incident, and "started noticing names and things that were being called on [his] voicemail" for a person named "Travis and T-Money."[1]

The victim gave a statement to the police and viewed a photographic lineup in which he identified the appellant as the person who carjacked, robbed and shot him.

The appellant was indicted in July of 2003 by the Shelby County Grand Jury for especially aggravated kidnapping, especially aggravated robbery and criminal attempt to commit first degree murder.

At trial, Erik Jenson, an officer with the Memphis Police Department, testified that he responded to a call regarding a carjacking victim at Church's Chicken on February 21, 2003. Upon his arrival, Officer Jenson found the victim, "in a lot of pain, fairly calm actually for just being shot." Officer Jenson testified that:

> [The victim] advised us that he had been driving somewhere around South Parkway and Elvis Presley when he was approached by a male black with a gun who got in his vehicle and made him drive. He drove until he got to the area of Dixie Homes at which time the suspect demanded money and a cell phone, which he gave him, and he said at that point he tried to get away and was shot. He says he ran and ended up at the Church's Chicken and called the police.

The officer testified that the victim described the suspect as a black man, about twenty-four (24) to twenty-seven (27) years old, about five-feet, seven-inches (5'7") tall, approximately 160 pounds with neatly-groomed facial hair.

Felicia Shipp, another officer with the Memphis Police Department, testified that she was called to the area of Waldran and Merriweather near Dixie Homes to check on a vehicle that was carjacked on February 21, 2003. The vehicle was a maroon or red 1990s Ford Explorer. Officer Shipp located the vehicle, notified the crime scene unit, and waited until the tow truck arrived to transport the vehicle to the city lot so that it could be examined for fingerprints. The vehicle was processed by Sergeant Eric Freeman the next day. Sergeant Freeman did not find any fingerprints on the vehicle.

The victim testified in detail about his ordeal. He explained that, when he was carjacked, he felt "dumbfounded, and [he] felt like [he] was in some serious trouble because . . . they instructing [sic] you to do something you already violated because you [sic] in your own space and that's been violated, and he instructing [sic] you to do something you're not capable of doing." The victim said

---

[1] At trial, Terry R. Lyons, a sergeant with the Memphis Police Department's Robbery Bureau, testified that the appellant's nickname is "T-Money."

he felt afraid, mad, upset and scared when the appellant carjacked him and robbed him. The victim explained that the appellant put the gun "upside his head" and "snatched his cell phone" before demanding the keys.

The appellant was taken into custody on February 27, 2003, and required brief hospitalization for unspecified injuries. Sergeant Lyons put out a press release on the appellant on February 28, 2003, which included sending the appellant's photograph to local television stations. The victim identified the appellant after seeing his photograph on television. The victim testified that he would never forget "from the top part of the eyes down" on the appellant.

Following the presentation of the evidence, closing arguments and jury instructions, the jury convicted the appellant of especially aggravated kidnapping, especially aggravated robbery and criminal attempt to commit second degree murder. The trial court sentenced the appellant as a violent offender to twenty (20) years for especially aggravated kidnapping to be served at one hundred percent (100%), twenty (20) years for especially aggravated robbery to be served at one hundred percent (100%), and ten (10) years for criminal attempt to commit second degree murder to be served at thirty-five percent (35%), with the sentences to run concurrently with each other, for an effective sentence of twenty (20) years. The trial court ordered that these sentences be served consecutively to the appellant's sentences in case numbers 03-05457 and 03-05459.

The appellant subsequently filed a motion for new trial in which he argued that the evidence was insufficient to support the jury verdict, that the trial court erred by allowing Officer Lyons to testify that the appellant was known as "T-Money" and that the trial court erred in "not directing out the charge of especially aggravated kidnapping after the State rested because the especially aggravated kidnapping charge was incidental to the accompanying especially aggravated robbery charge." The trial court denied the motion for new trial. On appeal, the appellant reiterates the issues as presented in his motion for new trial and argues that the trial court improperly instructed the jury.

Analysis

Sufficiency of the Evidence

On appeal, the appellant contends that the evidence presented at trial does not support his convictions for especially aggravated kidnapping, especially aggravated robbery and attempted second degree murder. The appellant fails to specify what portions of the evidence are insufficient. The State counters that the evidence "clearly supports the defendant's convictions."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked

-4-

with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779.

In the case herein, the appellant was convicted of especially aggravated kidnapping, especially aggravated robbery and attempted second degree murder. Especially aggravated kidnapping is defined as "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty," Tenn. Code Ann. § 39-13-302(a), "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1).

Especially aggravated robbery "is the intentional or knowing theft of property from the person of another by violence or putting the person in fear," Tenn. Code Ann. § 39-13-401(a), "(1) accomplished with a deadly weapon; and (2) where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-403(a) (1)-(2). "'Serious bodily injury' means bodily injury which involves: (a) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; or (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34). "Deadly weapon" means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(5).

Criminal attempt is defined as:

> (A) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

Tenn. Code Ann. § 39-12-101(a) & (b). Second degree murder is defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1). "'Knowing' refers to a person who acts knowingly with respect to the conduct or circumstances surrounding the conduct "when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20).

Viewed in a light most favorable to the State, the evidence at trial showed that the appellant carjacked, robbed and shot Kelvin Bryant on the evening of February 21, 2003, in Memphis. Mr. Bryant identified the appellant from a photographic lineup and testified at trial that he was certain that the appellant was the perpetrator. Mr. Bryant also testified that he was driving his ex-girlfriend's Ford Explorer when the appellant got into his vehicle, pointed a gun at him, and ordered him to drive to Dixie Homes. When Mr. Bryant told the appellant that he did not know how to get to Dixie Homes, the appellant directed Mr. Bryant to the location. The appellant then demanded that Mr. Bryant park the vehicle, pointed the gun in Mr. Bryant's face and "told [Mr. Bryant] to give him everything that [he] had in [his] pockets." When Mr. Bryant attempted to escape, the appellant shot him in the back. A few minutes later, the appellant pointed the gun at Mr. Bryant again and demanded the keys to the vehicle. Fortunately, Mr. Bryant managed to walk to Church's Chicken and had the employees call 911.

We determine that the evidence submitted at trial is sufficient for a rational trier of fact to convict the appellant of especially aggravated kidnapping, especially aggravated robbery, and attempted second degree murder. The evidence is sufficient to support the conviction for especially aggravated kidnapping because the evidence shows that the appellant knowingly confined the victim to his vehicle and accomplished the crime with the use of a gun. See Tenn. Code Ann. §§ 39-13-302 & -305. Further, the evidence is sufficient to support the appellant's conviction for especially aggravated robbery because the appellant instructed the victim to take him in the vehicle to Dixie Homes where the appellant robbed the victim using the gun and then shot the victim in the back as he tried to escape. The evidence shows that the appellant stole the victim's money, cell phone, and vehicle and that the victim suffered serious bodily injury as a result of the gunshot wound to the back. See Tenn. Code Ann. §§ 39-13-401 & -403. Finally, the evidence is sufficient to support the appellant's conviction for attempted second degree murder. The appellant shot the victim in the back as he tried to escape. See Tenn. Code Ann. § 39-12-101(a) & (b); Tenn. Code Ann. § 39-13-210(a)(1). This issue is without merit.

Jury Instructions

The appellant next argues that the trial court gave improper jury instructions for especially aggravated kidnapping and especially aggravated robbery. Specifically, the appellant argues that:

> [T]he jury instructions given pursuant to Counts One and Two of the indictment provided the jury with inconsistent guidelines concerning the elements of the offenses charged . . . the court mistakenly advised the jurors that the elements of especially aggravated kidnapping and especially aggravated robbery and their lesser-included offenses were the same as that of criminal attempt to commit those same offenses.

The appellant concedes in his brief that this issue has been waived due to his failure to object to the jury instructions at trial and his failure to raise the issue in a motion for new trial. However, in a reply brief, the appellant urges this Court to review this issue under the plain error standard.

Ordinarily, the appellant's issue would be considered waived because he failed to make a contemporaneous objection during trial and failed to raise the issue in a motion for new trial. See Tenn. R. App. P. 36(a); Tenn. R. App. P. 3 (e). When an issue is raised for the first time on appeal, it is typically waived. State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). However, we may address the issue in the event there was plain error on the part of the trial court. State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000). Thus, if this Court is to review the claims of improper jury instructions we must do so through the process of "plain error" review embodied in Tennessee Rule of Criminal Procedure 52(b) which provides:

> An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.[2]

In order to review an issue under the plain error doctrine, five (5) factors must be present: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. See Smith, 24 S.W.3d at 282-83; State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994); see also Tenn. R. Crim. P. 52(b). For a "substantial right" of the accused to have been affected, the error must have prejudiced the appellant. In other words, it must have affected the outcome of the trial court proceedings. United States v. Olano, 507 U.S. 725, 732-37 (1993) (analyzing the substantially similar Federal Rule of Criminal Procedure 52(b)); Adkisson, 899 S.W.2d at 642. This is the same type of inquiry as the harmless error analysis under Tennessee Rule of Appellate Procedure 36(b), but the appellant bears the burden of persuasion with respect to plain error claims. Olano, 507 U.S. at 732-37.

---

[2]This rule by its terms allows plain error review only where there is a failure to allege error in the new trial motion or where the error is not raised before the appellate court. Nevertheless the rule has been interpreted by the appellate courts to allow appellate review under some circumstances in the absence of a contemporaneous objection as well.

In the case herein, we are not persuaded that the appellant has successfully carried his burden of persuasion in establishing a plain error claim. First, the record is fairly clear as to what happened in the trial court. The jury charge is not part of the transcript but appears in the technical record. From the technical record, it appears that the trial court instructed the jury on the crimes as charged in the indictment and several lesser-included offenses, including criminal attempt of each crime and criminal attempt of each of the lesser-included offenses. The instructions on criminal attempt that appear in the technical record read as follows:

Criminal Attempt: To-wit: Especially aggravated kidnapping, Aggravated kidnapping, Kidnapping, and False Imprisonment.

Any person who attempts the criminal offense of [sic] is guilty of a crime.

For you to find a person guilty of especially aggravated kidnapping, aggravated kidnapping, kidnapping and false imprisonment, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
(1) that the defendant intended to commit the specific offenses of especially aggravated kidnapping, aggravated kidnapping, kidnapping and false imprisonment. and
(2)(a) that the Defendant did some act or caused something to happen that would have constituted especially aggravated kidnapping, aggravated kidnapping, kidnapping and false imprisonment, if the Defendant's beliefs at the time he acted had in fact been true.
The elements and definitions for these offenses have been previously defined.

. . . .

Criminal Attempt: To-wit: Especially aggravated robbery, Aggravated robbery, robbery, and Theft of property less than five [sic] ($500) dollars.

Any person who attempts the criminal offense of [sic] is guilty of a crime.

For you to find a person guilty of especially aggravated robbery, aggravated robbery, robbery, and theft of property less than five [sic] ($500) dollars, the State must have proven beyond a reasonable doubt the existence of the following essential elements:
(1) that the defendant intended to commit the specific offenses of especially aggravated robbery, aggravated robbery, robbery, and theft of property less than five [sic] ($500) dollars,
and
(2)(a) that the Defendant did some act or caused something to happen that would have constituted especially aggravated robbery, aggravated robbery, robbery, and theft of property less than five [sic] ($500) dollars, if the Defendant's beliefs at the time he acted had in fact been true.

The elements and definitions for these offenses have been previously defined.

After reading the jury instructions, we cannot say that a clear and unequivocal rule of law has been breached. The jury instructions obviously contemplate attempt as they begin with the phrase "any person who **attempts**" a criminal offense. It appears that the trial court merely committed a clerical error rather than making an intentional misstatement of the law to the jury. The jury instructions should read, "For you to find a person guilty of **attempt of**" each of the listed crimes, rather than "For you to find a person guilty of" each of the crimes. Further, we fail to see how a substantial right of the accused has been affected. The jury instructions, as written, actually inure to the benefit of the appellant by increasing the State's burden of proof. Moreover, the jury was clearly capable of determining the difference between a completed crime and an attempt as the jury found the appellant guilty of attempted second degree murder rather than the indicted offense of attempted first degree murder. Finally, there is no excuse or explanation proffered by the appellant either in the record or in his brief on appeal as to the reason for his failure to object to the jury instructions or raise the issue in a motion for new trial. Under these circumstances, we are of the opinion that the appellant has failed to carry his burden of persuasion in convincing this Court to consider as plain error the trial court's jury instructions. This issue is waived.

Alleged Violation of State v. Anthony

Finally, the appellant argues that pursuant to State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), "the especially aggravated kidnapping conviction should be reversed as being incidental to the especially aggravated robbery conviction of Count Two of the same indictment." Specifically, the appellant claims that "the facts do not support dual convictions." The State argues that the appellant's separate convictions for especially aggravated kidnapping and especially aggravated robbery do not violate due process.

In Anthony, our supreme court addressed the issue of whether dual convictions for armed robbery and aggravated kidnapping violated the due process guarantees of Article I, section eight of the Tennessee Constitution. The court concluded that when a confinement, movement, or detention is "essentially incidental" to an accompanying felony, such as robbery or rape, it is not sufficient to support a separate conviction for kidnapping. Id. at 306. The court warned that the kidnapping statute should be narrowly construed "so as to make its reach fundamentally fair and to protect the due process rights of every citizen . . . ." Id. In other words, before a defendant may be convicted of a kidnapping charge, the trial court must determine whether the confinement, movement, or detention [involved in the individual's case] is essentially incidental to the accompanying felony and if not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is, therefore, sufficient to support such a conviction. Id. at 306. "[O]ne method of resolving this question is to ask whether the defendants conduct 'substantially increased [the] risk of harm over and above that necessarily present in the [attending] crime . . . itself.'" Id. (quoting State v. Rollins, 605 S.W.2d 828, 830 (Tenn. Crim. App. 1980)).

In State v. Dixon, 957 S.W.2d 532 (Tenn. 1997), the supreme court further refined the approach to be taken when analyzing these issues. See id. at 535. The reviewing court must ascertain "whether the movement or confinement was beyond that necessary to consummate the act of" the accompanying offense. Id. "If so, the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id. The Dixon court clearly stated that the intent is not to provide a defendant with "a free kidnapping merely because he [or she] also committed" the primary offense, but rather is merely to "prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of" the accompanying crime. See id. at 534.

In the case herein, the evidence showed that, as the victim was turning the Ford Explorer around after getting lost, the appellant got into the vehicle, pointed a gun at the victim and told the victim to drive to Dixie Homes. The trip took about five (5) minutes. Once the two (2) arrived at Dixie Homes, the appellant demanded that the victim park the vehicle and hand over everything that the victim had in his pockets. The appellant pointed the gun at the victim's head during the robbery. When the victim attempted to escape, the appellant shot the victim in the back. A few minutes later, the appellant pointed the gun at the victim again and demanded the keys to the vehicle. It is apparent that the especially aggravated kidnapping in the case herein occurred prior to the especially aggravated robbery. The appellant could have robbed the victim the instant he entered the vehicle. Thus, the kidnapping was not "essentially incidental" to the robbery such that Anthony would bar dual convictions. This issue is without merit.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE