IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 10, 2018

**STATE OF TENNESSEE v. BREYON BATES**

**Appeal from the Circuit Court for Madison County**
No. 17-89     Roy B. Morgan, Jr., Judge

_____

**No. W2017-01930-CCA-R3-CD**

_____

The Defendant, Breyon Bates, was convicted by a Madison County Circuit Court jury of possession of .5 grams or more of cocaine with the intent to deliver, a Class B felony; simple possession of cocaine, a Class A misdemeanor; and resisting arrest and criminal impersonation, both Class B misdemeanors. The trial court merged the simple possession count into the possession with intent to deliver count and sentenced the Defendant as a Range II, multiple offender to concurrent terms of 18 years for the felony cocaine conviction and six months for each of the misdemeanor convictions, for an effective term of 18 years in the Department of Correction, to be served consecutively to the sentence for an offense for which the Defendant was on probation at the time he committed the instant offenses. On appeal, the Defendant challenges the sufficiency of the evidence in support of his felony conviction and argues that the trial court erred by not charging the jury with casual exchange under Tennessee Code Annotated section 39-17-419. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Jeremy B. Epperson, Jackson, Tennessee, for the appellant, Breyon Bates.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Jody S. Pickens, District Attorney General (on appeal), and Assistant District Attorney General (at trial), for the appellee, State of Tennessee.

**OPINION**

# FACTS

On the afternoon of July 2, 2016, officers with the Jackson Police Department were dispatched to a local Kmart store in response to a reported sighting of the Defendant, who had an active warrant for his arrest. The Defendant provided a false name and date of birth to the officer who first approached him and ran from another officer who was trying to detain him before a third officer tackled him to the ground. At the time of his arrest, the Defendant had a plastic sandwich bag containing two separate sandwich bags of powder cocaine and $330 in cash. The Madison County Grand Jury subsequently indicted the Defendant for possession of .5 grams or more of cocaine with the intent to sell, possession of .5 grams or more of cocaine with the intent to deliver, resisting arrest, and criminal impersonation.

## State's Proof

The first witness at the Defendant's May 31, 2017 trial was Jackson Police Officer Adam Pinion, who testified that officers were dispatched to the Kmart on Old Hickory Boulevard on July 2, 2016, in response to a "BOLO" or "be on the lookout" for the Defendant, for whom an arrest warrant had been issued. He said he arrived at the parking lot at approximately 5:40 p.m. and saw the Defendant leaning inside the window of a vehicle. When he asked the Defendant his name, the Defendant gave him a false name and a false date of birth. By that time, Officers Barham and Smith had arrived on the scene. After confirming that the information the Defendant had given him was not valid, Officer Pinion told Officer Barham to detain the Defendant. The Defendant attempted to run, but Officer Smith tackled him against the hood of a car, and the three officers together succeeded in handcuffing him. During their search of the Defendant, the officers found a cellphone, a cellphone charger, $330 in cash, and a clear bag containing a white substance that appeared to be powder cocaine. On cross-examination, Officer Pinion testified that when he first spotted the Defendant, he was talking to a woman who was in the driver's seat of a vehicle in which there were at least two child passengers. He acknowledged that he did not find any digital scales on the Defendant.

Officer Clayton Smith of the Jackson Police Department testified that when he arrived at the Kmart parking lot, Officer Pinion was in the driver's seat of his patrol vehicle and Officer Barham was standing beside the Defendant on the passenger side of Officer Pinion's vehicle. As Officer Smith began walking toward them, Officer Pinion exited his vehicle and said that they needed to detain the Defendant. At that point, the Defendant began running. Officer Smith testified that he "took off after [the Defendant] and tackled him to the ground." Once he and the Defendant were on the ground, the other officers came to his assistance, and they were quickly able to take the Defendant into custody.

Officer Smith testified that he and his fellow officers found on the Defendant a cellphone and cellphone charger, $330 in cash, and a plastic bag containing a white powder that appeared to be cocaine, which was subsequently placed in an evidence bin for transport to the Tennessee Bureau of Investigation ("TBI") for analysis. On cross-examination, Officer Smith acknowledged that the Defendant had no gun or scales at the time of his arrest.

TBI Special Agent Lela Jackson, the forensic chemist who analyzed the evidence submitted in the case, testified that the substance found on the Defendant consisted of a chunky off white powder that was contained in two separate plastic sandwich bags that were both inside a third sandwich bag. She said the substance inside one of the plastic bags consisted of 2.94 grams of cocaine hydrochloride. The other sandwich bag contained 3.99 grams of a similarly-appearing powder, making the combined weight of the substances in both bags 6.93 grams. She explained that she did not test the substance in the second bag because the powder in the first bag was of a sufficient weight to meet the requirement for the offense under Tennessee law.

Sergeant Sam Gilley of the Jackson Police Department, a supervisor with the Madison County Metro Narcotics Unit, testified that the street value of 6.93 grams of cocaine was $650 to $1400, depending on how it was sold. He explained that that amount of cocaine, which was around an ounce, would typically be purchased for $600 to $700 by a mid-level or street dealer who would then either: (1) cut it with other agents to increase the amount and sell it as a powder, or (2) cook it into crack cocaine, which could be sold for $20 per each tenth of a gram. He said the typical drug user who was not also a dealer would never risk exposure to a felony drug conviction by carrying such a large amount of cocaine for personal use:

> Most drug dealers sell narcotics in order to support a drug habit. So based on my personal opinion, to carry 7 grams of product, no, that's not a personal use amount to carry. . . . But to carry 7 grams at once, if you were just a user, that would be a no because most users know that over a half a gram of cocaine is a felony and they're only going to carry enough to use and not get charged with that felony.

Sergeant Gilley further testified that although the presence of scales could be an indication that a person in possession of 7 grams of cocaine was intending to resell it, its absence did not mean that the cocaine was intended solely for personal use because "[a] lot of dealers, especially with cocaine, are able to eyeball what they sell." On cross-examination, he acknowledged that he had previously testified in other cases that a gun, digital scales, and plastic sandwich bags were items that indicated that someone was trafficking in cocaine.

## Defendant's Proof

Darlene Millson, a retired probation officer, testified that the Defendant tested positive for cocaine and marijuana in an April 20, 2016 drug test. She said the Defendant denied cocaine use but admitted that he had used marijuana "every day of his adult life." On cross-examination, she testified that in a subsequent drug test on April 28, 2016, the Defendant was still positive for marijuana but was negative for cocaine. She said that, to her knowledge, the Defendant was not working during the time that she supervised him. When asked on redirect examination if she recalled how the Defendant supported himself, she testified that the Defendant told her that he had "lots of money from previous drug sales before he went to prison[.]" The Defendant also bragged about the expensive tennis shoes he was wearing, which he claimed cost $2,000. She had no recollection of the Defendant's ever mentioning that he had received funds from the settlement of his mother's estate.

Pamela Bates, the Defendant's aunt, testified that the Defendant received money from his mother's death, which he used to purchase lawn equipment and a vehicle. She said that the Defendant sold the vehicle a few days before his arrest in the instant case and that the cash he had on him came from the proceeds of that sale.

Alexis Anderson, the Defendant's fiancée, testified that she had observed the Defendant occasionally use cocaine but had never seen him sell it.

The Defendant testified that he was at the Kmart to purchase a high chair and car seat for his youngest son. He admitted that he provided a false name and date of birth, attempted to run from the officers, and was in possession of the cocaine found on his person. He denied, however, that he had any intent to sell or deliver the cocaine, testifying that it was solely for the personal use of himself and his fiancée. He stated that the cash he had with him came from the sale of his automobile, which he had bought with proceeds from the settlement of his mother's estate. He admitted that he used cocaine on a daily basis but lied to his probation officer about his usage on the date he tested positive for cocaine. He denied that he ever told his probation officer that he made a lot of money from selling drugs, asserting that he "never ever, ever, ever, ever, ever poisoned [his] community with drugs." Finally, he claimed that he did not have any idea "on how [he] would go about selling drugs."

On cross-examination, the Defendant acknowledged that he had been convicted of attempted aggravated robbery in 2005.

Following deliberations, the jury convicted the Defendant of the lesser included offense of simple possession of cocaine in count one and of the indicted offenses in

counts two through four. The trial court merged the simple possession conviction into the felony drug conviction and sentenced the Defendant as a Range II offender to an effective sentence of eighteen years at 35% in the Department of Correction.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his conviction for possession of .5 grams or more of cocaine with the intent to deliver. In support, he points out that he had no weapon or scales in his possession, despite the fact that digital scales and firearms are items often associated with the drug trade according to Sergeant Gilley's testimony. The State responds by arguing that there was sufficient evidence by which a jury could reasonably infer that the Defendant possessed the cocaine with the intent to deliver. We agree with the State.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Viewing the evidence in the light most favorable to the State, we conclude that it was more than sufficient to sustain the Defendant's felony drug conviction. The jury heard Sergeant Gilley's testimony with respect to his experience with drug cases and his opinion that the amount of cocaine found in the Defendant's possession was far more than someone would have for strictly personal use. The jury also heard Ms. Millson's testimony that the Defendant bragged about the large amount of money he made from selling drugs, as well as the Defendant's own testimony in which he claimed that he possessed the cocaine strictly for personal use and denied that he told Ms. Millson he made money by selling drugs. By convicting the Defendant of the offense, the jury obviously chose to accredit the testimony of the State's witnesses over that of the Defendant and his witnesses. This was its prerogative as the trier of fact. We, therefore, affirm the Defendant's conviction for possession of .5 grams or more of cocaine with the intent to deliver.

## II. Jury Instruction on Casual Exchange

The Defendant also contends that the trial court erred by not instructing the jury on casual exchange pursuant to Tennessee Code Annotated section 39-17-419, which provides as follows:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. *It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of § 39-17-417(a).* The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

Tenn. Code Ann. § 39-17-419 (emphasis added).

The Defendant argues that the above highlighted portion of the instruction was mandatory and that its omission deprived him of his constitutional right to a complete and accurate charge of the law. The State responds by arguing that the Defendant waived this issue for failure to request a supplemental instruction. In the alternative, the State argues that the Defendant is not entitled to relief because the proof did not warrant a jury instruction on casual exchange.

"It is well settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." State v. Dorantes, 331 S.W.3d 370, 390 (Tenn. 2011); see also State v. Farner, 66 S.W.3d 188, 204 (Tenn. 2001) (citing State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000)). Accordingly, trial courts have the duty to give "a complete charge of the law applicable to the facts of the case." State v. Davenport, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986)). "Whether jury instructions are sufficient is a question of law appellate courts review de novo with no presumption of correctness." State v. Clark, 425 S.W.3d 268, 295 (Tenn. 2014).

We, first, agree with the State that the Defendant waived this issue by failing to make a contemporaneous request for a supplemental instruction. "In the event of an omission or an otherwise incomplete instruction to the jury, as opposed to an erroneous one, a party has the duty to seek a supplemental charge, or else waives the issue." State v. James, 315 S.W.3d 440, 447 n. 3 (Tenn. 2010); see also State v. Haynes, 720 S.W.2d 76, 85 (Tenn. Crim. App. 1986) (citing State v. Rollins, 605 S.W.2d 828, 832 (Tenn. Crim. App. 1980) ("Mere meagerness of the charge is not reversible error, in the absence of a special request for an additional charge.")).

We further agree with the State that, even if not waived, the Defendant would not be entitled to relief on this issue because the evidence did not warrant an instruction on casual change. When addressing this issue at the hearing on the motion for new trial, the trial court found that the facts did not support the instruction because the evidence did not show an actual exchange of a small amount of a controlled substance:

> The Court finds very specifically in its recollection of this trial that there was no evidence to support any charge of the bracketed language [of Tennessee Pattern Jury Instruction 31.04] dealing with a small amount of controlled substance exchanged and that exchange could be considered a casual exchange. That was not this case. This case dealt with possession with the intent and would not be a proper charge to give because the evidence wouldn't support that at all. And again, that's bracketed

language, and you must determine again whether it would apply to this case before you give it.

The cases that the Defendant cites in support of his contention that the instruction was mandatory do not help his case, as both of them hold that an instruction is only mandatory when the evidence supports the charge. See State v. Helton, 507 S.W.2d 117, 120 (Tenn. 1974) ("Trial judges must determine from the evidence in each case whether it is appropriate to charge the first sentence, the second sentence, or both. In each case, charging of the appropriate inference or inferences is mandatory, because of the use of the word 'shall' in the third sentence of subsection (a) (2)."); Lee v. State, 498 S.W.2d 909, 913 (Tenn. Crim. App. 1973) ("We, hold, therefore[,] that the requested charge was not required to be given in this context, under the established rule that a charge is not required upon an offense not made out by the evidence.").

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE